## STEWART v. WHITE, GUARDIAN.

[No. 6,441.   Filed June 8, 1909.]

1.   PLEADING.—*Complaint.—Guardian and Ward.—Insane Persons.* —A complaint against the guardian of an insane person is the proper procedure for the enforcement of a claim against the estate of such person.   p. 89.

2.   PARTIES.—*Guardian and Ward.*—In an action against a guardian for money due from the ward's estate, such ward is not a necessary party.   p. 90.

3.   PLEADING.—*Complaint.—Insane Persons.—Necessaries Furnished.* —A complaint against a guardian alleging that such guardian's ward is insane, that before such guardian's appointment the

plaintiff furnished such ward board and lodging for sixty days, that such service was worth $5 per day, and that demand has been made and payment refused, is insufficient, since it fails to show that the services were not voluntary, or that the plaintiff took any steps to place such ward under guardianship, as required by law, so that she might be cared for legally. p. 90.

From White Circuit Court; *A. H. Plummer,* Judge.

Action by Charles E. Stewart against John B. Unger (Templeton White being substituted on appeal), as guardian of Elizabeth White, a person of unsound mind. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Bowers & Murphy,* for appellant.
*Alvah Taylor,* for appellee.

MYERS, J.—Appellant brought this action against John B. Unger as guardian of the estate of Elizabeth White, a person of unsound mind. A demurrer to the complaint for want of facts was sustained. Since the submission of this cause Unger resigned as such guardian, and appellee White, upon the order of this court, was substituted.

In the complaint it was in substance alleged that in January, 1900, Elizabeth White was notoriously and violently insane and at large in Wabash county, and wholly destitute of care and attention; that she was wholly incapacitated to contract for, and procure or to provide herself with, the necessaries of life; that she was without a guardian; that no person, either as a relative or otherwise, was caring or offering to care for her, and she was exposing herself to the severe winter weather, and was armed with an ax and other weapons, endangering the lives and property of herself and all other persons within her reach; that for her benefit and welfare appellant took her to his own home, and there provided her with suitable board, lodging, nursing and other necessaries, and continued to do so for sixty days; that continuously during that period she remained in said deranged mental condition, and was without a guardian, and without the care and attention of any other person, except appellant;

that said services and provisions were unusual and neces-
sary, and of the reasonable value of $5 per day. It was
further alleged that in 1900 said Unger was duly appointed
by the court below as guardian of the person and property
of said Elizabeth White, and qualified as such guardian.
The complaint shows payment demanded, its refusal, and
that a stated sum of money is due and unpaid; that said
Elizabeth White is the owner of property, from which ample
proceeds can be derived to pay for said necessaries and serv-
ices.

The appellee, by way of supporting the action of the court,
contends that the pleading was in the form of a complaint
in a civil action against the guardian, and was not in
1. proper form for the settlement of a claim against the
ward's estate addressed to the court as a court of
probate jurisdiction. In this State the practice requires that
disputed claims against a ward's estate, whether an infant
or a person of unsound mind, be presented by a complaint
or petition against the guardian in a court having jurisdic-
tion of the ward's estate and the person of the guardian.
*State, ex rel.,* v. *Fitch* (1888), 113 Ind. 478; *Turner* v.
*Flagg* (1893), 6 Ind. App. 563; *Rooker* v. *Rooker* (1878),
60 Ind. 550; *Gwaltney* v. *Cannon* (1869), 31 Ind. 227.

In *McNabb* v. *Clipp* (1892), 5 Ind. App. 204, an action
against a guardian upon her contract for board and lodging
supplied to the ward, upon which the guardian was held
personally liable, it was said that "under our code there is
no such thing as filing a claim against a guardianship or
against the estate of a ward. Hence the designation of the
appellant as guardian must be treated as a mere *descriptio
personae.*" Citing *Clark* v. *Casler* (1848) 1 Ind. 243;
*Lewis* v. *Edwards* (1873), 44 Ind. 333; *Elson* v. *Spraker*
(1885), 100 Ind. 374. Under the authorities before cited,
it will be seen that this action was properly brought.

It has also been held that in a suit against a guardian for
the allowance of a claim against the estate of his ward, and

2. for an order directing payment by the guardian out of such estate, the ward is not a necessary party. *Ray* v. *McGinnis* (1882), 81 Ind. 451. See, also, *Miller* v. *Hart* (1893), 135 Ind. 201.

The real question in this case is whether the complaint sufficiently shows a valid claim against the estate of Elizabeth White. No contract between the appellant and 3. Unger, either as guardian or personally, is shown by the complaint. It appears from that pleading that the person to whom appellant rendered the service stated was at the time well known by the appellant to be of unsound mind. He alleges that she was notoriously and violently insane, and describes open manifestation of her insanity. It is shown that because of her manifest insanity the services were rendered. She was incapable, as he knew, of binding herself or her estate by express contract, and the question is presented whether, upon the facts stated, a contract to pay for the services was created by law. The law is sensitive of the welfare of persons of unsound mind. The law is the real guardian of the insane, and the person nominated by the court as guardian is the agent of the law through the court.

The complaint does not show that at the time the appellant rendered the insane person the services alleged she had no relative or person upon whom she was entitled to rely for such services, or who was legally bound to render such services, or to pay for the same. It does not appear whether she was a minor daughter or the wife of a person competent to provide for her necessities. The complaint shows that at the time of the filing thereof the insane person had property. It does not show what was her condition in this respect when the services were rendered, and it does not appear that the services were rendered in reliance upon her ownership of property, or any expectation of being remunerated from her estate. For aught that appears in the

allegations, the services were purely voluntary at the time they were rendered.

It is provided by statute that whenever "any person" shall by statement in writing represent to the court having probate jurisdiction in any county that any inhabitant of such county is a person of unsound mind and incapable of managing his own estate, such court shall cause such person to be produced in court, and shall cause an issue to be made by the clerk of such court denying the facts set forth in such statement. The issue thus formed shall be treated as in civil actions, and may be tried by the court or by a jury, and if such person is found to be of unsound mind, the court shall appoint a guardian for such person, who shall have the custody of his person and the management of his estate. §§3101, 3102 Burns 1908, Acts 1895, p. 205, §§1, 2. If a guardian be appointed he shall pay the expenses of the trial (§3104 Burns 1908, Acts 1895, p. 205, §3), and must pay the attorney prosecuting the proceeding a reasonable fee. *Brownlee* v. *Switzer* (1874), 49 Ind. 221; *State, ex rel.,* v. *Newlin* (1879), 69 Ind. 108. "If it shall appear to the court that there is danger to the community in permitting such person of unsound mind to run at large, the court shall make such order for his safe-keeping as may be necessary, and direct the expenses thereof to be paid out of the estate of such person; or, if that be insufficient, or necessary for the support of his family, then out of the county treasury." §3111 Burns 1908, §2555 R. S. 1881. Provision is also made by statute (§3691 Burns 1908, §2842 R. S. 1881) whereby an insane person is entitled to be maintained and to receive medical treatment in the State Hospital for the Insane at the expense of the State upon the filing of a statement upon oath in writing by a respectable citizen of the proper county before a justice of the peace. §3692 Burns 1908, §2843 R. S. 1881. Other provision is made (§7879 *et seq.* Burns 1908, §5142 *et seq.* R. S. 1881) whereby, when complaint is made on oath

before any justice of the peace that any person is insane and
dangerous to the community if suffered to remain at large,
the justice shall issue his warrant to the constable or sheriff
for the apprehension of such person and bring him before
the justice forthwith.   If, in the proceedings thereupon,
such person is found to be insane and dangerous to the com-
munity if suffered to remain at large, the justice is required
to "appoint some resident of the county to take charge of
and confine such person, for which he shall receive a rea-
sonable compensation from the board of commissioners of
the county" out of the county treasury, and provision is
made for refunding, under certain circumstances, such ex-
penses out of the estate of said insane person.   These statu-
tory provisions, thus seeking to protect the insane and their
estates, together with the community, are scarcely consistent
with an intention that any respectable citizen voluntarily,
and of his own motion, may take an insane person into his
private custody, and so retain said person for two months,
and then, upon the appointment of a guardian, through legal
forms, may call upon such guardian for payment for such
services out of the estate of the insane person.

It is not meant by us to pass upon the question not here
presented, whether services rendered by a stranger for the
protection of an insane person or his property may not, in
some cases, be charged to the insane person's estate.   If no
exigency is shown indicating sufficient reason for delay in
resorting to the methods provided by statute, and no reason
is given for interfering, because of the refusal of those hav-
ing a prior duty toward the insane person, and it is not made
to appear that reasonable efforts to save expense to the in-
sane person were exhausted, and it is not shown that the
services were not rendered voluntarily, we can find no suf-
ficient reason for enforcing payment by the subsequently ap-
pointed guardian out of his ward's estate.

Judgment affirmed.