Vincent L. TOFANY, Appellant,
(Defendant Below)

v.

NBS IMAGING SYSTEMS, INC.,
Appellee.  (Plaintiff Below)

No. 02S03–9307–CV–754.

Supreme Court of Indiana.

July 14, 1993.

John R. Wilks, Wilks and Kimbrough, Fort Wayne, for appellant.

William T. Hopkins, Jr., Gallucci, Hopkins & Theisen, Fort Wayne, for appellee.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

NBS Imaging Systems, Inc., (Appellee–Plaintiff below) ("NBS Imaging") seeks transfer after the Court of Appeals reversed the trial court and approved the offensive use of collateral estoppel by Vincent L. Tofany (Appellant–Defendant below) against NBS Imaging. *Tofany v. NBS Imaging, Inc.* (1992), Ind.App., 597 N.E.2d 23. In affirming the trial court, we address the following issues:

(1) Whether a person who was not a party to a prior suit may use the judgment from that suit "offensively" to prevent a defendant from re-litigating issues resolved by the prior judgment;

(2) Whether the trial court's findings of fact and conclusions of law supported its' decision;

(3) Whether the trial court's judgment was inconsistent with the evidence; and

(4) Whether NBS Imaging is entitled to damages pursuant to Appellate Rule 15(G).

## Facts

The facts of this case are not disputed. The Court of Appeals opinion accurately stated the facts as follows.

In early 1985, Vincent Tofany was the president of a division of Mohawk Data Systems, Inc., a corporation engaged in providing driver's license systems to state agencies. In March of 1985, the division was sold to National Business Systems ("NBS"), a Canadian company which manufactured, marketed, and sold imprinters and credit cards. Tofany accepted a job as president of NBS Imaging Systems, Inc., ("NBS Imaging"), a subsidiary of NBS located in Fort Wayne. He retained that position until he was terminated on February 25, 1988.

Tofany's troubles with NBS Imaging began when it came to light in 1987 that NBS Imaging had inflated its sales and reported fictitious profits of $4.6 million for the third quarter of that year when in fact the company had experienced a $5.2 Million third-quarter loss in 1987. When this information became generally known in the financial community, stock prices plummeted and trading was halted on the Toronto Stock Exchange and NASDAQ. The Securities and Exchange Commission and the Ontario Securities Commission began investigating the company's financial status. The Board of Directors of NBS called for a reorganization of management and Hees International Corp., ("Hees"), a management services company, was brought in to clean house. NBS's president was removed and Hees' employee Timothy Casgrain was placed in the position of president and CEO. Hees and Casgrain studied the situation, conducted a number of interviews with NBS Imaging staff, and determined that nearly all of the individuals in the top tier of management should be held accountable for the questionable financial dealings of the company. These individuals, including Tofany, were discharged.

After NBS Imaging's upper management was discharged, the story was reported in the Fort Wayne News–Sentinel. In an article appearing in the News–

Sentinel on March 1, 1988, under the heading "3 NBS Managers Fired for Alleged Irregularities," Casgrain was quoted as stating, "There have been some accounting irregularities and because they oversaw accounting, they were held responsible."

Soon after his termination, Tofany began trading barbs with NBS Imaging in a polemic which would escalate into the present lawsuit. Tofany began this altercation by threatening to submit the terms of his alleged employment agreement to arbitration. On March 9, 1988, NBS Imaging countered by filing a complaint to stay the threatened arbitration proceedings in Allen Circuit Court on the grounds that Tofany had no employment agreement. Tofany answered and counterclaimed, alleging that he had an employment agreement and further alleging that he was entitled to executive retirement plan benefits, unreimbursed expenses, and stock funds. NBS Imaging answered and amended its complaint, adding a count alleging that it had guaranteed a note for Tofany in the amount of $80,000, on which Tofany defaulted in December of 1988. Tofany answered the amended complaint and amended his counterclaim, alleging that he suffered a defamation of character as a result of Casgrain's comment to the News–Sentinel which caused permanent damage to his reputation and career. Tofany then filed a motion for partial summary judgment, contending that NBS Imaging was barred from relitigating the existence of a pension plan based upon a decision in the Federal District Court for the Northern District of Indiana in an action against NBS filed by Kenneth James, one of Tofany's fellow management employees at NBS Imaging. *See James v. National Business Systems,* (N.D.Ind. 1989), 721 F.Supp. 169, *rev'd. and rem'd.* (7th Cir.1991), 924 F.2d 718. This motion was denied by the trial court.

A bench trial was conducted and judgment was entered in favor of Tofany for $1,492.00 paid into stock funds. Recovery was not permitted on any of the other claims.

*Id.* at 25–26.

Tofany appealed. The Court of Appeals determined that the trial court erred by not granting Tofany's motion for partial summary judgment and remanded the case for a new trial on the retirement plan claim. In reaching this conclusion, the Court of Appeals approved the offensive use of collateral estoppel where the standards stated in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), are satisfied. Additionally, the Court of Appeals held that the trial court was not obligated to make special findings of fact and conclusions of law where neither party submitted a written request for them, that the evidence supported the trial court's judgment, and that NBS Imaging was not entitled to damages for an abuse of the judicial process.

### Collateral Estoppel

NBS Imaging raises several arguments in support of its assertion that the Court of Appeals improperly applied the offensive use of collateral estoppel. First, NBS Imaging asserts that the Court of Appeals decision contravenes Indiana precedent prohibiting the offensive use of collateral estoppel. Second, NBS Imaging asserts that the Court of Appeals incorrectly decided a new question of law by adopting the offensive use of collateral estoppel. Finally, NBS Imaging asserts that, if a party is able to assert offensive collateral estoppel, the Court of Appeals erred by exceeding the permissible scope of review when it weighed factual determinations that were within the discretion of the trial court.

In response, Tofany asserts that the Court of Appeals properly allowed the offensive use of collateral estoppel. Tofany argues that Indiana precedent is not contravened because *Watson Rural Water v. Indiana Cities Water Corp.* (1989), Ind. App., 540 N.E.2d 131, recognized the offensive use of collateral estoppel. Tofany also argues that the Court of Appeals did not exceed the permissible scope of review in determining that the standards of *Park-*

*lane Hosiery* have been satisfied because the trial court merely denied the motion for summary judgment without making findings of fact and that, here, the underlying purpose of collateral estoppel is furthered where NBS Imaging had a full opportunity to litigate the issues, through its parent corporation, in a prior action.

■■■ Generally, collateral estoppel operates to bar a subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit. In that situation, the first adjudication will be held conclusive even if the second is on a different claim. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, 137. Collateral estoppel has been referred to as offensive or defensive depending on how a party asserts the former judgment. Regardless of whether the use is termed "offensive" or "defensive," collateral estoppel is asserted against a party who had a prior opportunity to litigate an issue and lost. *Parklane Hosiery v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). The term "offensive" collateral estoppel has been used to describe the situation where the "plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party." *Parklane Hosiery*, 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4. Similarly, when the defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost against another defendant, the use has been termed "defensive" collateral estoppel. *Id.* Although both are forms of collateral estoppel, and arguably should be treated alike, they have received different treatment by the courts.

Traditionally, Indiana required identity of parties and mutuality of estoppel before collateral estoppel could be invoked. *Tobin v. McClellan* (1947), 225 Ind. 335, 344, 73 N.E.2d 679, 683; *Town of Flora v. Indiana Serv. Corp.* (1945), 222 Ind. 253, 257, 53 N.E.2d 161, 163; *Dayton v. Fisher* (1870), 34 Ind. 356, 358. "Mutuality of estoppel" refers to the requirement that "one taking

advantage of the prior adjudication would have been bound had the prior judgment gone the other way." *State v. Spiedel* (1979), 181 Ind.App. 448, 456, 392 N.E.2d 1172, 1177. "Identity of parties" refers to the requirement that the party to be bound by a prior adjudication must be the same as or in privity with the party in the prior action. *Id.*, 181 Ind.App. at 454, 392 N.E.2d at 1176. Thus, in Indiana, a stranger to the judgment, one who is neither a party nor in privity with a party to the prior judgment, has not been permitted to take advantage of collateral estoppel in the subsequent action. *Id.* As a result, the traditional requirements of collateral estoppel allowed few to take advantage of it.

Recently, this Court relaxed the rigid traditional requirements for the defensive use of collateral estoppel in *Sullivan v. American Casualty*, 605 N.E.2d at 137, by rejecting the requirements of mutuality of estoppel and identity of parties as prerequisites to the defensive use of collateral estoppel. Instead, to determine whether the defensive use of collateral estoppel is appropriate, a court is to consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Id.* at 138. Applying this holding in *Sullivan*, we concluded, in affirming the trial court's grant of summary judgment, that the defendant could properly use collateral estoppel to prevent the plaintiff from re-litigating a negligence issue. *Id. Sullivan*, however, did not address the appropriateness of or requirements for the offensive use of collateral estoppel.

NBS Imaging argues that the Court of Appeals improperly relied on *Watson Rural Water v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, when it held that Indiana recognizes the offensive use of collateral estoppel. NBS Imaging asserts that the appellate court in *Watson* improperly termed the collateral estoppel "offensive" where the parties to the two actions are identical and that "defensive" or "offensive" collateral estoppel only re-

fers to cases where a party in the second action was not a party in the first action.

In *Watson,* the plaintiff was permitted to assert a prior administrative decision against the defendant which foreclosed the defendant from re-litigating liability. *Id.* at 134. Determining that all requirements were satisfied, the court applied collateral estoppel. *Id.* at 135. Additionally, in a footnote, the court termed the use "offensive." *Id.* at 135 n. 2. Although the use of collateral estoppel in *Watson* does not come within the precise definition of "offensive" collateral estoppel as stated in *Parklane Hosiery,* it comes within the principle of *Parklane Hosiery* in that a party was precluded from re-litigating an issue which the party had previously litigated and lost. Consequently, to the extent that a plaintiff is able to establish the traditional requirements of collateral estoppel, Indiana law has permitted that plaintiff to assert "offensive" collateral estoppel against a defendant.

■ The offensive use of collateral estoppel has been viewed as more problematic than the defensive use of collateral estoppel by commentators and courts. In *Parklane Hosiery,* the Supreme Court examined these concerns and explained that the main challenges to the offensive use of collateral estoppel can be put into two general categories, judicial economy and unfairness to the defendant. 439 U.S. at 332–33, 99 S.Ct. at 652–53. First, the Court noted that the offensive use of collateral estoppel does not promote judicial economy in the same manner as the defensive use of collateral estoppel because, when used offensively, the later plaintiff does not have the incentive to intervene in the first action but, rather, to wait for a favorable outcome and to assert the prior judgment against the defendant in a second action. *Id.,* 439 U.S. at 332, 99 S.Ct. at 652. Second, the Court explained that unfairness to the defendant against whom an estoppel is asserted may result from, but is not limited to, the following situations:

(a) where the defendant had little incentive to vigorously litigate the first action either because the damages were small

or nominal, or because future suits were not foreseeable;

(b) where the judgment relied upon for estoppel is inconsistent with one or more previous judgments in which the defendant was successful; or

(c) where procedural opportunities are available to the defendant in the latter action which were unavailable to him in the previous action and which would likely affect the result.

*Id.,* 439 U.S. at 330–31, 99 S.Ct. at 651–52. Although the Court recognized these concerns, it held that the trial court should be given broad discretion to determine whether the offensive use of collateral estoppel is appropriate. *Id.,* 439 U.S. at 331, 99 S.Ct. at 651. Further, the Court stated that the trial court should not allow collateral estoppel to be used offensively where the plaintiff could have easily joined the prior action or where the application of offensive collateral estoppel would otherwise be unfair to the defendant. *Id.* Because we believe that the offensive use of collateral estoppel will assist our courts in preventing unnecessary re-litigation of issues and will promote consistent trial court judgments, we hold that offensive collateral estoppel may be used subject to the requirements set forth in *Parklane Hosiery.*

■ The trial court partakes in a two-step process in determining the appropriateness of allowing a party to assert collateral estoppel offensively. First, the trial court determines whether the party in the prior action had a full and fair opportunity to litigate the issue. Second, the trial court determines whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. The factors to be considered, discussed here and in *Parklane Hosiery,* are not exhaustive, but rather provide a framework for the trial court to utilize. The trial court may consider privity, the defendant's incentive to litigate the prior action, the defendant's ability to defend the prior action, and the ability of the plaintiff to have joined the prior action. When considering the defendant's incentive to litigate, the trial court may consider the

interest at stake for the defendant as well as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions.

■ Collateral estoppel promotes judicial economy; in particular, it reduces the amount of court time devoted to retrying previously litigated issues. For example, when the trial court allows a party to assert collateral estoppel offensively, the trial court becomes free to devote time to other matters. By the same token, if a trial court determines that the offensive use of collateral estoppel is inappropriate, great deference is given to this decision because it is the trial court which will devote time to try the case. As a result, the trial court's decision to disallow the offensive use of collateral estoppel will only be reversed upon a showing that the trial court abused its discretion.

■ Discretion is afforded a trial court to act in accord with what is fair and equitable in each case. *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, 180. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court misinterpreted the law. *Id.* "An abuse of discretion is an erroneous conclusion in judgment when clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom." *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 291.

■ In the present case, Tofany filed a motion for partial summary judgment. In his motion, Tofany asserted that NBS Imaging was collaterally estopped from denying the existence of the pension plan because the judgment in *James v. National Business Sys.*, 721 F.Supp. 169 (N.D.Ind. 1989), *vacated and rem'd.*, 924 F.2d 718 (7th Cir.1991), established that the pension plan existed. The trial court denied the motion and tried the case. The bench trial resulted in a judgment in favor of Tofany in the amount of $1,492 for reimbursement of stock payments and, contrary to the earlier case, established that NBS Imaging did not have in existence a pension plan in which Tofany participated.

At the time the trial court denied the motion for partial summary judgment, the law in Indiana regarding collateral estoppel was unclear. Until recently, Indiana required both mutuality of estoppel and identity of parties in order for a party to successfully assert collateral estoppel. *See Sullivan v. American Casualty* (1992), Ind., 605 N.E.2d 134, 138. The record supports the finding that these traditional requirements were not met and that the trial court acted within its discretion in denying Tofany's motion.

Additionally, even under the standard announced today, the trial court could have properly denied the motion. The trial court could have found that Tofany could easily have joined the first action but instead decided to "wait and see." Facts which indicate Tofany's ability to join the prior action include both cases involving the issue of the pension plan's existence, the *James* case being tried in the United States District Court for the Northern District of Indiana and that Tofany testified in the *James* case. Additionally, the trial court could have considered the fact that *James* and, in particular, the issue of the pension plan's existence was on appeal at the time of its deliberation. The trial court's determination was not clearly against the logic of the circumstances, but rather was a reasonable conclusion. Therefore, we find that the trial court did not abuse its discretion.

### Remaining Issues

■ We have considered the arguments on whether the trial court's findings of fact support the trial court's judgment, whether the trial court's judgment was inconsistent

with the evidence, and whether NBS Imaging is entitled to damages, and conclude that the Court of Appeals properly decided these issues. Therefore, pursuant to Indiana Appellate Rule 11(B)(3), we adopt and incorporate by reference the Court of Appeals opinion regarding those issues. Additionally, we address Tofany's challenge to the sufficiency of the evidence regarding the existence of the pension plan. He asserts that the findings of the district court in *James*, plus the uncontradicted evidence at trial that his application, physical exam, and enrollment in the plan were completed, establish that he participated in the pension plan. An examination of the record, however, also reveals that there was testimony from several witnesses that the plan was being formulated for future adoption, and that the Board of Directors of NBS had not approved the plan. Thus, there was substantial evidence to support the trial court's judgment that the pension plan did not exist.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals except for those parts specifically adopted and incorporated, and affirm the judgment of the trial court.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Judge, concurring in result.

Because I remained convinced that the traditional rule in Indiana for invoking collateral estoppel provided needed protection for the right of all persons to assert and control the presentation of their individual claims and defenses in court, and that the judicial economy rationale for jettisoning the traditional rule had too little real weight, I dissented in *Sullivan v. American Cas. Co.* (1992), Ind., 605 N.E.2d 134. The traditional rule properly required privity and mutuality of estoppel. I would continue to require that those elements be present for the offensive as well as the defensive use of the rule. Here, the trial judge rejected the estoppel plea altogether. I therefore concur in affirming his judgment.