**Ruth HAYWORTH, Executrix of the Estate of Daniel Hayworth, Deceased, Appellant,**

v.

**SCHILLI LEASING, INC.; Schilli Transportation Service, Inc., Schilli Motor Lines, Inc., Fruehauf Corporation and Geupel Demars, Inc., Appellees.**

No. 04S03–9505–CV–546.

Supreme Court of Indiana.

Aug. 6, 1996.

Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellant Ruth Hayworth.

Edward E. Rundell, Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, for Appellee Fruehauf Corporation.

Ind. Defense Lawyers Ass'n by Lloyd H. Milliken, Jr., Todd J. Kaiser, and Kevin C. Schiferl, Indianapolis, Ind. Trial Lawyers Ass'n by Theodore F. Smith, Jr. Anderson, amici curiae.

## ON PETITION TO TRANSFER

DICKSON, Judge.

This is an interlocutory appeal challenging a trial court's order enjoining a defendant's former employee from consulting with, or providing trial or deposition testimony on behalf of, the plaintiff in a wrongful death products liability case. The Court of Appeals affirmed. *Hayworth v. Schilli Leasing, Inc.*, 644 N.E.2d 602 (Ind.Ct.App.1994).

Plaintiff-appellant Ruth Hayworth filed a wrongful death action against defendant Fruehauf Corporation, among others,[1] after her husband was killed May 9, 1988, in a work-related accident involving a dump trailer manufactured by Fruehauf. During her pre-trial investigation and discovery, the plaintiff retained George Hagelthorn, a registered professional engineer, as an expert witness. Hagelthorn had been employed as an engineer by Fruehauf from 1965 until his retirement in 1982. Hagelthorn thereafter formed his own consulting corporation, provided technical advice and expert testimony to plaintiffs' attorneys in products liability litigation, and testified on behalf of Fruehauf in thirteen or fourteen lawsuits. Record at 334. On the day before Hagelthorn was to be deposed by one of the other defendants, Fruehauf asked the trial court to enjoin

---

[1] Also named in her lawsuit were Schilli Leasing, Inc., Schilli Transportation Service, Inc., Schilli Motor Lines, Inc., and Geupel DeMars, Inc. Hayworth reached a settlement agreement with Schilli Transportation Service and Schilli Motor Lines; Geupel DeMars's motion for summary judgment was granted as to all of Hayworth's claims against it. As a result, Fruehauf is the only remaining defendant for purposes of this appeal.

Hagelthorn from consulting with or testifying for any person or attorney participating in the litigation. The trial court ordered the Hagelthorn deposition stayed pending its resolution of Fruehauf's motion.

Thereafter, Fruehauf initiated an action against Hagelthorn in the Circuit Court for Wayne County, Michigan, seeking injunctive relief to prevent Hagelthorn from acting as an expert witness or consultant in any litigation brought by any plaintiff against Fruehauf. Following preliminary proceedings and a hearing, the Michigan court denied Fruehauf's motion for preliminary injunction and dismissed the petition for permanent injunction. The trial court was subsequently affirmed. *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich.App. 447, 528 N.W.2d 778, *appeal denied*, 450 Mich. 229, 543 N.W.2d 314 (1995). Notwithstanding Michigan's rejection of Fruehauf's efforts to prohibit Hagelthorn's participation against Fruehauf in all litigation, the Indiana trial court granted Fruehauf's motion to enjoin Hagelthorn's participation in the present case.[2] The plaintiff's motion to certify that order for an interlocutory appeal was granted, and the Court of Appeals accepted the appeal, *see* Ind.Appellate Rule 4(B)(6), but affirmed the trial court, finding the order to be justified by the attorney-client privilege and rejecting the plaintiff's claim of collateral estoppel. We granted the plaintiff's petition for transfer.

In this appeal, the plaintiff identifies three grounds for her contention that the trial court erred in precluding Hagelthorn's participation as an expert witness: (1) collateral estoppel; (2) work-product or attorney-client privilege; and (3) public policy. We decline to consider the public policy issue as an independent claim of error but will consider plaintiff's public policy arguments within our analysis of the remaining two issues.

The grant or denial of an injunction is within the trial court's sound discretion and will only be reversed upon a finding that the court has abused that discretion. *Amoco Production Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993). An abuse of discretion will be found if the trial court's ruling is "clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

### Collateral Estoppel

In this appeal, the plaintiff first contends that the injunction is erroneous because collateral estoppel operates to bar Fruehauf from relitigating an issue previously determined against it in the Michigan proceeding. Collateral estoppel generally "operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Sullivan v. American Casualty Co.*, 605 N.E.2d 134, 137 (Ind.1992). Recognition of the doctrine without the previously imposed prerequisites of identity of parties and mutuality of estoppel first occurred in Indiana in the context of the defensive[3] use of the doctrine. *Id.* The use of collateral estoppel without these prerequisites was extended to offensive application the following year. *See Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1038 (Ind.1993). A trial court must consider two factors in determining whether to apply collateral estoppel: whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances of the particular case to apply collateral estoppel. *Tofany*, 616 N.E.2d at 1037–38. *See also Sullivan*, 605 N.E.2d at 138. While the same two-part test

---

**2.** The trial court order enjoined Hagelthorn "from testifying in this action, either upon deposition or at trial, and from consulting or discussing with or disclosing to any party in this action, directly or indirectly, Fruehauf Corporation's trade secrets, confidential information, or matters of Attorney-client privilege or work-product." Record at 462–63.

**3.** When used "defensively," collateral estoppel forecloses a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant. "Offensive" collateral estoppel bars a defendant from relitigating an issue the defendant previously lost against another plaintiff. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552, 561 (1979).

applies to both defensive and offensive applications, we have recognized that the latter may pose particular risks of unfairness and that the former is more likely to promote judicial economy.[4] *Tofany*, 616 N.E.2d at 1038.

In order for collateral estoppel to apply here, the fact or issue necessarily adjudicated in the former Michigan proceeding must be the same fact or issue presented by this case. *See Sullivan*, 605 N.E.2d at 138. In the present case, the trial court granted Fruehauf's motion and enjoined Hagelthorn "from testifying in this action ... and from consulting or discussing with or disclosing to any party to this action, directly or indirectly, Fruehauf Corporation's trade secrets, confidential information, and matters of attorney-client privilege or work-product." Record at 462–63. In the Michigan case, Fruehauf sought to enjoin Hagelthorn from "discussing with anyone any information relating to [Fruehauf], and from consulting or testifying as an expert in any products liability case brought against [Fruehauf], asserting that [Hagelthorn's] consultation and expert services violated the attorney-client privilege."[5] *Fruehauf Trailer Corp.*, 528 N.W.2d at 780. Denying the requested relief, the Michigan courts found that "Hagelthorn was not functioning as an attorney, nor was he an agent of an attorney, while employed by Fruehauf"; that "information relayed between [Hagelthorn] and [Fruehauf's] attorneys was not confidential ... consequently, the privilege was inapplicable"; and that "[Fruehauf] would not have prevailed on the merits owing to the inapplicability of the attorney-client privilege." *Id.* at 781.

In her memorandum in opposition to Fruehauf's motion to preclude and enjoin Hagelthorn from either testifying or communicating with any party regarding Fruehauf's trade secrets, confidential information, and matters of attorney-client privilege or work-product, the plaintiff argued to the trial court that Fruehauf should be collaterally estopped because "the issues involved in the Michigan case were identical in all relevance [sic] to the issues presented by Fruehauf's present motion." Record at 314. The plaintiff did not specifically assert that the Michigan court had adjudicated the individual issue of attorney-client privilege upon which Fruehauf was collaterally estopped. Rather, the plaintiff argued that the refusal of the Michigan court to enjoin Hagelthorn operated broadly as a complete bar to Fruehauf's motion. Unlike Fruehauf's motion in the present case, however, the Michigan ruling did not encompass issues of trade secrets, confidential information, or work product. *See* Record at 333, 344. Because Fruehauf's requested injunction in this case covered issues not litigated in the Michigan proceeding, collateral estoppel does not entirely foreclose Fruehauf's request for injunctive relief.[6]

## Work–Product Doctrine and Attorney–Client Privilege

The plaintiff next contends that the attorney-client privilege and the work-product doctrine should not broadly prevent Hagelthorn from all consulting and testimony in this case. The plaintiff further argues that no attorney-client privilege applies because Hagelthorn was neither an attorney nor an agent of Fruehauf's attorneys. She argues that work-product protection is inapplicable both because it shields only documents and tangible items, not general engineering knowledge, and because claims of work product must be asserted and considered on a particularized, document-by-document basis. The plaintiff further argues that Fruehauf

---

4. We note in passing that the present case involves the use of defensive, rather than offensive, collateral estoppel. Plaintiff Hayworth is seeking to prevent Fruehauf from relitigating an issue that Fruehauf previously lost as a plaintiff. With respect to Fruehauf's motion seeking affirmative relief to prevent Hayworth from access to Hagelthorn as a consultant and expert witness, Fruehauf is in a position analogous to that of a plaintiff seeking a form of relief that was previously denied to it as a plaintiff in another judicial proceeding.

5. The injunction requested by Fruehauf "was not limited to specific litigation or confidential information but sought to prevent [Hagelthorn] from providing any services that related in any way to" Fruehauf. *Fruehauf Trailer Corp*, 528 N.W.2d at 781.

6. We express no opinion as to whether the decision in the Michigan proceeding may provide a basis for collateral estoppel on the individual issue of attorney-client privilege.

has waived any work-product or attorney-client privilege claims by utilizing Hagelthorn as an independent expert witness on behalf of Fruehauf. Fruehauf responds by arguing that the trial court record shows that "Hagelthorn was an agent of Fruehauf lawyers and was privy to information protected by the attorney-client privilege and the attorney work product doctrine." [7] Brief of Fruehauf Corporation, Appellee at 22.

■ We first observe that courts disfavor blanket claims of privilege such as that asserted by Fruehauf. *Petersen v. U.S. Reduction Co.*, 547 N.E.2d 860, 862 (Ind.Ct.App. 1989). The party seeking to assert a privilege has the burden to allege and prove the applicability of the privilege "as to each question asked or document sought." *Owens v. Best Beers of Bloomington, Inc.*, 648 N.E.2d 699, 702 (Ind.Ct.App.1995) (citing *In re Walsh*, 623 F.2d 489, 493 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980)). Claims of privilege "must be made and sustained on a question-by-question or document-by-document basis." *Petersen*, 547 N.E.2d at 862. In its request for injunctive relief, Fruehauf does not merely request the protection of specific documents or particularized information but seeks generally to isolate Hayworth and preclude him from any communications in this case.

■ The plaintiff argues that Fruehauf waived the privilege with regard to *all* matters when it called Hagelthorn as an expert witness in unrelated litigation. The Michigan trial court noted in its bench opinion that Fruehauf itself utilized Hagelthorn as an expert witness about thirteen or fourteen times between the years 1982 and 1986. Record at 334. While the attorney-client privilege is waived with respect to matters disclosed in previous testimony, *Taylor v. Taylor*, 643 N.E.2d 893, 898 (Ind.1994), and as to communications not treated as confidential, *Lewis v. State*, 451 N.E.2d 50, 55 (Ind.1983), we decline to construe the waiver to apply to all potential testimony by Hagelthorn. The fact that Fruehauf previously utilized Hagelthorn as a witness demonstrates only that Fruehauf believes that Hagelthorn possesses general expertise, perhaps on matters never privileged to begin with, to which his testimony could be limited without confidential information being revealed. Presumably, the same or similar general matters could be the subject of his testimony in this case without Fruehauf's interests being harmed. The fact that Hagelthorn previously testified for Fruehauf does not effect a complete waiver of Fruehauf's claim of attorney-client privilege.

■ Although rare circumstances might exist in which a blanket claim of privilege might prevail, they are not present here. The record does not support any argument that Hagelthorn's participation in this case would present a substantial, unavoidable risk of disclosure of a matter constituting a trade secret, covered by attorney-client privilege, or otherwise confidential. Because Hagelthorn might thus feasibly testify about various matters without violating any privileges or revealing trade secrets or other confidential matters, the complete prohibition of Hagelthorn's participation in the case is improper. If Fruehauf wishes to prevent the disclosure of specific communications or particular materials, it may seek such limited protection and must demonstrate its entitlement thereto. As to Hagelthorn's deposition or trial testimony, Fruehauf may seek relief from the trial court on a question-by-question basis.[8]

---

7. The attorney-client privilege is rooted in Indiana's case law, *see Brown v. State*, 448 N.E.2d 10, 13–14 (Ind.1983), our statutes, Ind. Code § 34–1–14–5, and our court rules, Ind.Professional Conduct Rule 1.6. The work-product doctrine prohibits a party in litigation from obtaining from another party its "attorney's notes and memoranda reflecting the attorney's theories and mental impressions about the case." *Cua*, 626 N.E.2d at 584 (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and Ind.Trial Rule 26(B)(3)).

8. Because of Fruehauf's contention that Hagelthorn was an agent of Fruehauf's lawyers, we note that for the attorney-client privilege to attach to communications between the agent of an attorney, the communication in question must be "made to the agent upon the same subject matter about which the attorney was consulted," and the agent must have been "retained by the attorney for the purpose of assisting him and rendering legal advice to or conducting litigation on behalf of the client." *Brown v. State*, 448 N.E.2d 10, 14 (Ind.1983). Thus, if Hagelthorn were

Fruehauf further argues that the trial court's order is supported by *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 575 N.E.2d 116 (1991), wherein the Supreme Court of Ohio affirmed a 1989 trial court order permanently enjoining Huffstutler, a former employee-attorney of American Motors Corp. (AMC), from consulting or testifying in products liability cases involving AMC.

Huffstutler was employed by AMC as an engineer in 1974 and thereafter attended law school with partial assistance from AMC, became a lawyer, served as general manager of the AMC Product Design Studies Group, and "worked intimately with the legal department and its privately retained counsel in products liability cases involving AMC Jeep, particularly 'rollover' claims." *American Motors Corp.*, 575 N.E.2d at 118. The trial court found that he "had access to confidential attorney-client information, attorney work product information involving rollover and other litigation, and highly confidential trade secrets." *Id.* After AMC terminated his employment in 1988, Huffstutler immediately began offering his services as an expert witness in cases against AMC wherein he sold to plaintiffs' counsel privileged documents and materials that he had improperly removed from AMC. *Id.* In affirming the trial court order, the Ohio Supreme Court noted that, even if only considering Huffstutler as "an agent acting on behalf of legal counsel to AMC," he was subject "to all the legal implications of the attorney-client and attorney work product privileges," *id.* at 119; moreover, it concluded, "In order to protect the attorney-client and work product privilege, injunctive relief is appropriate, particularly where, as here, it is demonstrated that the former employee-attorney has already violated the privilege and threatens to continue such practice." *Id.* at 121.

In contrast to Huffstutler, an attorney, who one year following the termination of his AMC employment was ordered to return all AMC materials that he had removed without AMC's consent and was enjoined from testifying and consulting regarding products liability litigation involving AMC, *id.* at 117–18, the witness at issue here is a non-attorney who operated an independent engineering consulting firm for over six years following his retirement from Fruehauf and who was not found by the trial court to have unlawfully removed any protected documents from his former employer. Because of the substantial factual distinctions and our state's preference for individualized, rather than blanket, determinations of claims of privilege, we do not reach the same result as did Ohio in *Huffstutler*.

Amicus curiae Indiana Defense Lawyers Association urges the application of the approach utilized in *Cua v. Morrison*, 626 N.E.2d 581 (Ind.Ct.App.1993), *adopted*, 636 N.E.2d 1248 (Ind.1994), and *Canfield v. Sandock*, 563 N.E.2d 526 (Ind.1990). While both of those cases principally involved the physician-patient privilege, this Court in *Canfield* observed the structural equivalence of the physician-patient and the attorney-client privileges, noting that the statutory source of both privileges, Indiana Code section 34–1–14–5, provides "as much protection to physician-patient confidences as is provided to attorney-client confidences because of the marked similarity of interests being protected." *Canfield*, 563 N.E.2d at 529.

In *Canfield*, a personal injury action, the trial court had quashed subpoenas requesting all of the plaintiff's medical records and had granted a protective order prohibiting the defendant from seeking those records from the plaintiff's treating physicians. *Id.* at 527–28. Although affirming the rulings of the trial court, we noted that when the privi-

found to be an agent of Fruehauf's attorneys, the privilege would not encompass communications between Hagelthorn and other Fruehauf employees that merely took place incident to Hagelthorn's engineering and management responsibilities for Fruehauf.

We note that Fruehauf and amicus Indiana Defense Lawyers Association appear to have misapprehended the roles of the various players with

respect to application of the privilege in arguing that Hagelthorn was an agent of the attorney with regard to conversations between Hagelthorn and the attorneys. Such conversations would not constitute attorney-client communications. With regard to an internal communication between an attorney and an attorney's agent, the proper privilege to assert might be work product, but it is not the attorney-client privilege.

lege is asserted, "the trial court must review the contested materials and determine whether the claim of privilege is justified or mistaken." *Id.* at 531. We further observed:

> The expectation of all parties should be that ... requested documents are either relevant and discoverable or irrelevant but innocuous such that no harm will result from disclosure, that discovery will proceed without the court's participation, and that invocation of the privilege will be reserved to protect from discovery information about only those conditions of the most intimate nature.

*Id.*

In *Cua,* the trial judge was found to have abused his discretion by ordering a personal injury plaintiff to sign a release allowing defense counsel to engage in ex-parte communication with the plaintiff's medical care providers, for the reason that this method "poses a substantial threat that privileged information would be disclosed and that such information is not required for fair and efficient trial preparation." *Cua,* 626 N.E.2d at 584. The court noted the following principal public policy concern:

> The relationship of patient to physician is a particularly intimate one. To the physician we bare our bodies and or [sic] psyches. We do that in confidence that what is seen and heard will remain unknown to others. The protection of that confidential relationship is worth some inconvenience to the legal process.

*Id.* at 586.

We need not decide in the present case whether the structural equivalence of the physician-patient and the attorney-client privileges necessarily requires completely symmetrical application or whether the unique personal intimacy that characterizes the physician-client privilege demands specialized enforcement methodology. In both *Sandock* and *Cua,* the existence of the confidential relationship and the resulting privilege was unquestioned, and the information sought to be discovered was clearly derived from that relationship.

In contrast to *Sandock* and *Cua,* wherein the existence of a physician-patient relationship and its attendant obligation of confidentiality was not in dispute, in the present case the parties vigorously dispute whether nonattorney Hagelthorn's relationship to Fruehauf and its attorneys created enforceable obligations of confidentiality and attorney-client privilege. Furthermore, unlike a physician's knowledge of her patient's medical history, the vast substance of Hagelthorn's general professional engineering knowledge necessarily embodies information not claimed to be privileged. This is not a case calling for extraordinary court action to protect presumptively confidential information.

Although the trial court noted Fruehauf's argument that Hagelthorn had been "privy" to communications protected as work-product or attorney-client privilege, the injunction was not limited to precluding disclosure of specific documents or information that may have fallen within such protections but imposed a blanket restriction upon his right to communicate regarding any and all matters, including his general engineering knowledge and expertise. We conclude that it was an abuse of discretion to enjoin Hagelthorn generally from all consulting and testifying in this case. If Fruehauf seeks to prevent Hagelthorn from the alleged unlawful disclosure of specific information that was obtained by Hagelthorn during his employment and that may be entitled to protection under law, the disclosability of such information is preferably resolved by individual, particularized consideration and adjudication.

We vacate the trial court order granting Fruehauf's motion to enjoin Hagelthorn's participation in this case. This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, SULLIVAN and SELBY, JJ., concur.