## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2018, 7:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Charles Michael Fox
Clarksville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Michael Fox, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Thomas Wilmer Fox, <br> *Appellee-Defendant.* | November 20, 2018 <br><br> Court of Appeals Case No. <br> 18A-SC-1055 <br><br> Appeal from the <br> Clark Circuit Court <br><br> The Honorable <br> Kenneth R. Abbott, Magistrate <br><br> Trial Court Cause No. <br> 10C01-1802-SC-167 |

**Kirsch, Judge.**

**MEMORANDUM DECISION**

[1] Charles Michael Fox ("Charles") appeals the trial court's dismissal of his small claims case, wherein he alleged that his brother, Thomas Wilmer Fox

("Thomas"), embezzled $6,000 from Charles's trust while serving as Charles's guardian. On appeal, Charles raises three issues, which we restate as 1) whether Charles's small claims action was properly dismissed under the collateral estoppel doctrine; 2) whether the small claims action was an impermissible collateral attack on the guardianship; and, 3) whether the trial court had subject matter jurisdiction over the embezzlement claim.

[2] We affirm.

## Facts and Procedural History

[3] Charles suffered from schizophrenia, which caused him to hear voices. Before his death, Charles's father funded a trust with $150,000 that was designated for Charles's care. *Guardianship Tr. Vol. 3* at 15. In 1994, Thomas was appointed as Charles's guardian. *Tr. Vol. 2* at 6. In 2001, Thomas spent $6000 from the trust to rent an apartment for Charles, and in 2002, Thomas spent approximately $50,000 from the trust to buy Charles a condominium. *Appellant's Br.* at 8. No other funds from the trust were expended on Charles's behalf, so the balance of the trust should have been approximately $100,000. *See Tr. Vol. 2* at 8-10.

[4] At some point during the guardianship, Charles was put on medication, which eased his symptoms. *Id.* at 12. At Charles's request, the guardianship was terminated on January 7, 2015, without Thomas having filed an accounting. *Id*. at 6; *Appellant's Non-Conforming App. Vol. 1* at 30. On February 2, 2015, Charles emailed Thomas, demanding that Thomas disburse the remainder of

the trust to Charles; Thomas declined. *Appellant's Br.* at 5. On July 13, 2015, Charles asked the probate court to re-open the guardianship, partly because Thomas had not filed a final accounting. *Id*. at 10; *Tr. Vol. 2* at 7; *Appellant's Non-Conforming App. Vol. 1* at 30. Charles also alleged that Thomas had embezzled funds from the trust. *Appellant's Br.* at 10.

[5] On September 3, 2015, the probate court reopened the guardianship. *Appellant's Non-Conforming App. Vol. 1* at 31. Thomas eventually filed a final accounting, though Charles contended it was vague and inadequate. *Tr. Vol. 2* at 7. On February 2, 2016, the probate court approved the final accounting and terminated the guardianship. *Appellant's Non-Conforming App. Vol. 1* at 34.

[6] On March 28, 2017, Charles filed a Petition for Clarification, and on May 22, 2017, the probate court heard the matter. *Guardianship Tr. Vol. 3* at 4; *Appellant's Non-Conforming App. Vol. 1* at 35. At the hearing, Charles asked for guidance about the effective dates of Thomas's discharge as the guardian and termination of the guardianship. *Guardianship Tr. Vol. 3* at 4-6, 8-11, 13-14, 16. Charles sought this information because he wanted to know if he was still within the one-year statute of limitation prescribed by Indiana Code section 29-3-9-6(h) to sue a guardian after the guardian has been discharged. The probate court directed Charles to consult an attorney but opined that it appeared the statute began to run on February 1 or February 2, 2016, more than fifteen months earlier, and that Charles, therefore, had likely missed the deadline. *Id*. at 9, 11.

[7] Believing that Thomas had embezzled about $100,000 from him, Charles filed suit in small claims court, seeking $6,000, because he believed Thomas had no more than $6,000 and because there was no documentary evidence to prove how much money Thomas had embezzled from the trust. *Tr. Vol. 2* at 4-6.

[8] At the small claims hearing, Charles acknowledged there was a final accounting in the guardianship. *Id.* at 7. The trial court observed that Charles should have filed his embezzlement claim in the guardianship case. At the end of the hearing, the trial court took the matter under advisement to see what had transpired in the guardianship case. *Id.* at 16-20; *Appellant's App. Vol. 2* at 4. On March 23, 2018, the trial court dismissed Charles's small claims action, stating:

> [H]aving reviewed the statements and arguments of [Charles] and having reviewed the record of his guardianship proceeding in Circuit Court No. 1, and hereby finds that the issues raised in [Charles's] Statement of Claim have been dealt with and resolved in the guardianship proceeding.
>
> IT IS, THEREFORE, ORDERED that [Charles's] Statement of Claim is dismissed.

*Id.* at 7. Charles now appeals.

## Discussion and Decision

[9] Thomas has not filed an appellee's brief. In such a situation, we do not undertake the burden of developing his arguments. *See Hill v. Ramey,* 744 N.E.2d 509, 511 (Ind. Ct. App. 2001). We apply a less stringent standard of review where we may reverse the trial court if Charles establishes *prima facie*

error. *See id. Prima facie* is defined as "at first sight, on first appearance, or on the face of it." *Id.* If an appellant cannot meet this burden, we will affirm. *Damon Corp. v. Estes*, 750 N.E.2d 891, 892-93 (Ind. Ct. App. 2001). In reviewing an order of dismissal, we may affirm the ruling based on any theory supported by the record. *See Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018).

[10]     Collateral estoppel bars re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit. *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993). In that situation, the first adjudication will be held conclusive even if the second is on a different claim. *Id.* An appellate court considers whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair to permit the use of collateral estoppel. *Id.* In the context of probate court proceedings, our Supreme Court has held that settlement and discharge of an estate bars a claim that the guardian has misappropriated funds from the estate. *Peacocke v. Leffler*, 74 Ind. 327, 330 (1881).

[11]     Here, the trial court properly concluded that the guardianship case necessarily adjudicated Charles's embezzlement claim. *See Tofany*, 616 N.E.2d at 1037. One reason the guardianship was re-opened, at Charles's request, was that Charles claimed Thomas was embezzling funds. *See Appellant's Br.* at 10 ("I had told [the guardianship judge], both verbally and in my petition to reopen the guardianship case, *of the embezzlement* . . . .") (emphasis added). The other reason the guardianship was re-opened, again at Charles's request, was to

compel Thomas to file a final accounting, by which Charles had hoped to prove that Thomas had embezzled funds. *Tr. Vol. 2* at 4; 6-7. Thus, Charles had a fair opportunity to litigate his embezzlement claim. When he complains about the alleged inadequacy of the final accounting and the lack of documentary evidence to support his embezzlement claim, he impliedly concedes that the matter has been resolved, though not to his liking. *Id.* Thus, the embezzlement claim was barred once the guardianship court accepted the final accounting and discharged Thomas as guardian. Accordingly, the trial court did not err in dismissing Charles's small claims case on the basis that the guardianship proceeding resolved the embezzlement claim. Charles's dissatisfaction with that result does justify a second chance to relitigate the issue in another case. *See Tofany*, 616 N.E.2d at 1037.

[12] There are two additional reasons to affirm the trial court's decision:

[13] First, Charles's small claims embezzlement action was an impermissible collateral attack on the guardianship adjudication. A guardianship settlement "*cannot be collaterally attacked* but must be set aside by a *direct proceeding*." *Kuhn v. Boehne*, 27 Ind. App. 340, 61 N.E. 199, 200 (1901) (emphasis added). Thus, Charles should have sought relief in a direct action in probate court.

[14] Second, dismissal was proper because the probate court had exclusive jurisdiction over the guardianship. "Any person having a claim against . . . the guardian as such may file the claim with *the court* . . . ." Ind. Code. § 29-3-10-1(d) (emphasis added). "'*Court*' means the court having probate jurisdiction . . .

." Ind. Code § 29-3-1-3 (emphasis added). In Indiana, "the practice requires that disputed claims against the estate of wards, whether infants or persons of unsound mind, be presented by a complaint or petition against the guardian *in a court having jurisdiction of the ward's estate and the person of the guardian*." *Stewart v. Unger*, 44 Ind. App. 87, 88 N.E. 716, 717 (1909) (emphasis added). Charles's small claims embezzlement action was an impermissible collateral attack on the guardianship proceeding, and the trial court lacked subject matter jurisdiction over that claim.

[15] Charles has failed to meet his burden to demonstrate that the trial court's order of dismissal was *prima facie* error. *See Hill*, 744 N.E.2d at 511.

[16] Affirmed.


Vaidik, C.J., and Riley, J., concur