Harold E. SLUTSKY, Appellant–Plaintiff,

v.

James Don CREWS and Gibson
Insurance Agency, Inc.,
Appellees–Defendants.

No. 50A04–9808–CV–413.

Court of Appeals of Indiana.

June 10, 1999.

Publication Ordered July 12, 1999.

Timothy J. Abeska, David R. Kibbe, Roemer & Mintz, South Bend, Indiana, Attorneys for Appellant.

Philip E. Kalamaros, Edward N. Kalamaros & Associates, P.C., South Bend, Indiana, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Harold E. Slutsky appeals the trial court's entry of summary judgment in favor of James Don Crews and Gibson Insurance Agency, Inc. (collectively "Crews and Gibson"). Slutsky filed suit against Crews and Gibson alleging negligence, breach of fiduciary duty and constructive fraud. Crews and Gibson filed their motion for summary judgment and, following a hearing held on June 30, 1998, the trial court entered summary judgment in their favor.

We affirm.

### ISSUE

The dispositive issue presented for our review is whether Slutsky is estopped from litigating his claims against Crews and Gibson pursuant to the doctrine of collateral estoppel.

### FACTS AND PROCEDURAL HISTORY

Slutsky is a shareholder and President of Slutsky–Peltz Plumbing and Heating, Inc., ("Slutsky–Peltz"), SPS Mechanical Company, Inc., ("SPS"), and Southeast Project Specialists, Inc. ("Southeast"), all of which are or were actively engaged in the construction business. James Don Crews, a principal of Gibson Insurance Agency, Inc., is in the business of contractor's insurance and bonding. For several years, Crews and Gibson have secured construction bonds for Slutsky's three companies through American Casualty Company of Reading, Pennsylvania ("American Casualty").

On July 2, 1991, American Casualty issued performance and payment bonds on behalf of SPS in the amount of $1,490,340.00 in connection with the construction of an expansion complex at the U.S. Penitentiary in Atlanta Georgia (the "Penitentiary Project"). Because Slutsky did not want to assume any personal indemnity liability in connection with the bonds issued for the Penitentiary Project, Crews negotiated with American Casualty and reached an agreement whereby, in lieu of personal indemnity, Slutsky and other officers of SPS made loans to SPS in the amount of $250,000.00 which loans were subordinated to American Casualty.

Thereafter, on June 17, 1992, American Casualty issued performance and payment bonds on behalf of Southeast in the amount of $756,543.00 in connection with the construction of the Etowah County Criminal Justice Center in Gasden, Alabama (the "Etowah Project"). Again, Crews negotiated on behalf of Slutsky. American Casualty did not require personal indemnity liability from Slutsky prior to issuing the bonds.

On October 7, 1992, American Casualty issued performance and payment bonds on behalf of SPS for the installation of an underground steam and condensate piping system at the Redstone Arsenal in Madison County, Alabama ("Redstone Project") and for construction of an undergraduate residence hall at Georgia Tech University ("Georgia Tech Project"). The Redstone Project bonds were issued in the amount of $1,402,909.50 and the Georgia Tech Project bonds were issued in the amount of $2,275,316.00. Prior to issuing the bonds, due to the size of the Georgia Tech Project coupled with the three years of operating losses for SPS, American Casualty required limited personal indemnity liability from Slutsky. American Casualty forwarded a General Agreement of Indemnity ("GAI")

to Crews who, in turn, forwarded the GAI to Slutsky. Paragraph 19 of the GAI provided that the GAI applied to bonds, undertakings and other writings obligatory in the nature of a bond, written by American Casualty on behalf of Slutsky or his companies "now in existence or which may hereafter be created or acquired." Record at 14. The GAI limited Slutsky's personal liability to $1,500,000.00. Slutsky executed the GAI on October 6, 1992.

Subsequently, in 1993, Slutsky requested that Crews negotiate the release of his personal indemnity liability, but, American Casualty refused to release Slutsky from the GAI. After running into several problems invoking the bonds, on April 5, 1996, American Casualty filed a lawsuit against Slutsky in the United States District Court for the Northern District of Indiana, South Bend Division (the "Federal Court Action"). American Casualty sought to enforce Slutsky's obligations under the GAI with regard to the U.S. Penitentiary Project, the Etowah Project, the Redstone Project and the Georgia Tech Project.

Prior to an adjudication of the Federal Court Action, Slutsky filed his complaint in the present case against Crews and Gibson on July 23, 1997, in the Marshall Circuit Court. Slutsky alleged that Crews and Gibson breached duties owed to Slutsky in connection with his execution of the GAI. Specifically, Slutsky alleged that Crews and Gibson led him to believe that the GAI applied solely to the Georgia Tech Project and that, in reliance upon the advice of Crews and Gibson, Slutsky executed the GAI to his detriment. Based upon those alleged facts, Slutsky's complaint alleged negligence, breach of fiduciary duty and constructive fraud.

Thereafter, American Casualty filed a motion for summary judgment in the Federal Court Action and Slutsky filed a cross-motion for partial summary judgment. On September 9, 1997, Judge Robert L. Miller, Jr. entered summary judgment in favor of American Casualty. Judge Miller concluded that Slutsky was liable to indemnify American Casualty for payments made in connection with all four projects. In entering summary judgment, Judge Miller also adjudicated several contentions raised by Slutsky as defenses to American Casualty's contract claim.

On April 30, 1998, Crews and Gibson filed their motion for summary judgment in the present action. Following a hearing, the trial court concluded that there was no genuine issue of material fact for trial and that Crews and Gibson were entitled to judgment as a matter of law. It is from this entry of summary judgment that Slutsky now appeals.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to any fact or inference to be drawn therefrom in favor of the party opposing summary judgment. *Ebbinghouse v. First-Fleet, Inc.*, 693 N.E.2d 644, 646 (Ind.Ct.App. 1998), *trans. denied.* Summary judgment is appropriate only if the designated evidentiary matter shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party appealing the entry of summary judgment has the burden of persuading this court that the trial court's grant of summary judgment was erroneous. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind. 1993). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996).

### Collateral Estoppel

Slutsky contends that summary judgment was inappropriate on his claims against Crews and Gibson for negligence, breach of fiduciary duty and constructive fraud. Crews and Gibson respond that the same facts and issues Slutsky now raises were previously litigated and decided in the Federal Court Action and, thus, summary judgment is warranted in the present case pursuant to the doctrine of collateral estoppel. We agree with Crews and Gibson.

■ Collateral estoppel, or what is known as "issue preclusion," bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent cause of action. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind.1998). In such a situation, the first adjudication will be held conclusive even if the second action is on a different claim. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 137 (Ind.1992). Where a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff has previously litigated and lost against another defendant, the use has been termed "defensive" collateral estoppel. *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993).

■ Traditionally, Indiana has required identity of parties and mutuality of estoppel before the doctrine of collateral estoppel could be invoked. *Id.* Accordingly, "a stranger to the judgment, one who is neither a party nor in privity with a party to the prior judgment, has not been permitted to take advantage of collateral estoppel in the subsequent action." *Id.* However, our supreme court has rejected those rigid requirements as prerequisites to the defensive use of collateral estoppel. *Sullivan*, 605 N.E.2d at 137. Instead, in determining whether the defensive use of collateral estoppel is appropriate, the court must consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Tofany*, 616 N.E.2d at 1037.

■ Here, Crews and Gibson seek to prevent Slutsky from asserting facts and issues which, they contend, he has previously litigated and lost against American Casualty. Although neither Crews nor Gibson were parties to the Federal Court Action, they assert defensive collateral estoppel to preclude Slutsky's current claims. In the Federal Court Action, American Casualty sought to enforce the GAI against Slutsky with regard to all four construction projects. In defense of the enforcement of that contract, Slutsky raised, *inter alia*, the affirmative defense of constructive fraud on the part of Crews and Gibson.[1] Specifically, Slutsky alleged that he relied upon the advice, statements and expertise of Crews and Gibson as to the application of the GAI, and that he executed the GAI to his detriment with the belief that it applied only to the Georgia Tech Project. American Casualty and Slutsky filed cross-motions for summary judgment.[2] The federal court subsequently entered summary judgment in American Casualty's favor.

■ In entering summary judgment in American Casualty's favor in the Federal Court Action, Judge Miller specifically considered and ruled upon several issues raised by Slutsky as genuine issues of material fact as to his affirmative defenses including: (1) whether the GAI was freely negotiated; and (2) whether [Slutsky], in signing the GAI, reasonably relied upon [Crews's] advice, statements and expertise. Record at 399. In summary judgment proceedings, the burden of establishing the existence of a material affirmative defense is on the defendant. *Abbott v. Bates*, 670 N.E.2d 916, 922 (Ind.Ct. App.1996).

In his well-reasoned and thorough opinion, Judge Miller concluded in pertinent part:

Mr. Slutsky's argument that the GAI was unconscionable, not freely negotiated or the product of misrepresentation are not persuasive, even at this summary judgment stage. First, the law presumes that a person understands that which he signs. There is no dispute that Mr. Slutsky signed the GAI. Second, that the GAI is a form contract leads to no inferences of inequitable conduct or disparity in bargain-

---

1. The elements of constructive fraud are: (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; and (3) reliance on that representation or omission by the individual to whom the duty is owed and to the detriment of that individual. *Medtech Corp.* *v. Indiana Ins. Co.*, 555 N.E.2d 844, 850 (Ind.Ct. App.1990), *trans. denied.*

2. American Casualty sought summary judgment on all issues raised in its complaint. Slutsky sought partial summary judgment.

ing power. Mr. Slutsky is a sophisticated businessman well versed in sophisticated business transactions and contractual arrangements; by his own admission, Mr. Slutsky has the business sense to engage in and presumably to understand sophisticated business transactions such as cross-corporate indemnity and subordination of loans. Thus, the court is unpersuaded that a reasonable fact-finder could find Mr. Slutsky would not have understood the gravity and potential ramifications of signing a document entitled "General Agreement of Indemnity," whereby he subjected himself to personal indemnity up to $1.5 million. No facts of record support Mr. Slutsky's conclusory allegations that the GAI was unconscionable, not freely negotiated or the product of misrepresentation.

\* \* \* \* \*

Mr. Slutsky does not point to any evidence that could permit a finding that Mr. Crews affirmatively told him that the GAI did not apply to any [bonds other than Georgia Tech] or that Mr. Crews affirmed an erroneous misunderstanding of Mr. Slutsky's.

Record at 406–08 (citations omitted).

In addition, Judge Miller distinguished the Indiana cases cited by Slutsky with regard to constructive fraud and justifiable reliance and found the facts alleged by Slutsky insufficient to create a genuine issue for trial. In sum, Judge Miller determined, as a matter of law, that Crews made no affirmative misrepresentations to Slutsky as to the application of the GAI, that Crews did not, by omission, affirm any misunderstanding as to the application of the GAI and, further, that Slutsky failed to establish justifiable reliance on Crews' advice, statements and expertise regarding the application of the GAI.

In the instant case, Slutsky raises three claims against Crews and Gibson: (1) negligence; (2) breach of fiduciary duty, and (3)

constructive fraud. All three of these claims have distinct legal definitions and required elements. However, in all three counts, Slutsky contends that Crews and Gibson breached their duties [3] to Slutsky "by leading him to believe that the GAI applied solely to the Georgia Tech project," and that "[i]n reliance upon the advice of Crews and Gibson, Slutsky executed the GAI to his detriment." Record at 7–13. Regardless of the labels Slutsky places on his claims, we construe each count of Slutsky's complaint as an alternative claim for breach of duty arising out of a representation or omission as to the application of the GAI, and detrimental reliance on Slutsky's part. In other words, each count of Slutsky's complaint is, in essence, a claim for constructive fraud. Judge Miller has already resolved that issue, as a matter of law.[4] Slutsky cannot change the label from that which he asserted as an affirmative defense in the prior action and repackage his claims merely to revive the issue decided. As noted earlier, when an issue has been necessarily adjudicated in a former suit, the first adjudication will be held conclusive even if the second action is on a different claim against a different party. *See Sullivan,* 605 N.E.2d at 137. We will not favor form over substance when determining the propriety of collateral estoppel.

As we have stated, the defensive use of collateral estoppel is appropriate in cases where the party against whom the judgment is pled had a full and fair opportunity to litigate the fact or issue and where it would not be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Tofany,* 616 N.E.2d at 1037. Slutsky voluntarily raised constructive fraud on the part of Crews and Gibson as an affirmative defense in the Federal Court Action and has had a full and fair opportunity to litigate the material facts and issues underlying his claim, i.e., whether Crews and Gibson, by

---

3. In each count, Slutsky alleges a duty on the part of Crews and Gibson by virtue of the long-standing relationship between the parties.

4. We note that the federal summary judgment procedure differs significantly from Indiana's summary judgment procedure. *Tom v. Voida,* 654 N.E.2d 776, 782 (Ind.Ct.App.1995) (citing

*Jarboe v. Landmark Community Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 123 (Ind.1994)), *trans. denied.* However, Slutsky neither contends nor are we convinced that the difference in summary judgment standards makes the application of collateral estoppel inappropriate or unfair in the instant state court action.

affirmative misrepresentation or omission, led him to believe that the GAI applied only to the Georgia Tech project and, whether he executed the GAI to his detriment in justifiable reliance upon such misrepresentation or omission. Slutsky cannot now relitigate those issues.

Further, we are not persuaded that the application of collateral estoppel to Slutsky's claims would be otherwise unfair under the circumstances presented. Contrary to Slutsky's argument, Judge Miller's conclusions as to the issues raised by Slutsky were not unnecessarily decided and merely "incidental" to his entry of summary judgment in the Federal Court Action. Slutsky transformed himself into a plaintiff pursuing resolution of those issues when he raised Crews' and Gibson's involvement in his execution of the GAI as an affirmative defense to American Casualty's contract claim. Judge Miller specifically indicated that the entry of summary judgment disposed of the issues raised by Slutsky when he stated "[t]he court believes today's resolution of the summary judgment motions considers each of [Slutsky's contentions]." Record at 399. Slutsky cannot now complain that the federal court adjudicated issues which he himself raised.

Finally, Slutsky maintains that, unlike the Federal Court Action, the present case is a tort action rather than a contract action. Notwithstanding that distinction, the same facts and issues applicable to his tort claims against Crews and Gibson were raised as defenses to the contract action and adjudicated by the federal court. Summary judgment in favor of Crews and Gibson is appropriate pursuant to the doctrine of collateral estoppel.

The trial court's entry of summary judgment is affirmed.

## ORDER

The court having heretofore issued its opinion on June 10, 1999, marked Memorandum Decision, Not for Publication; and

Come now the Appellees, by counsel, and file herein Petition for Publication, alleging therein that the Court's decision clarifies the use of defensive collateral estoppel and the opinion would assist lawyers and judges in understanding the concept and its usage, which said Petition is in the following words and figures, to wit:

(H.I.)

And the Court, having examined said Petition and being duly advised, now finds that the Appellees' Petition should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellees' Petition for Publication is granted.

GARRARD, J., and KIRSCH, J., concur.