## NEW ALBANY–FLOYD COUNTY EDUCATION ASSOCIATION, Appellant–Plaintiff,

v.

## Carol AMMERMAN, et al., Appellees–Defendants.

### No. 22A01–9905–CV–153.

Court of Appeals of Indiana.

Feb. 10, 2000.

Richard J. Darko, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorney for Appellant.

William F. Diehl, Gagnon & Diehl, Indianapolis, Indiana, Kristian M. Dahl, Attorney Pro Hac Vice, Springfield, Virginia, Attorneys for Appellees.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff New Albany–Floyd County Education Association ("the Association") appeals from the trial court's denial of its motion to correct error filed in response to the trial court's grant of the motion of summary judgment and dismissal filed by appellee-defendant Ronald Holman ("Holman")[1] and the court's denial of the Association's motion for summary judgment. We affirm in part and reverse in part and remand with instructions.

### Issues

The Association raises four issues for our review, which we combine and restate as follows:

(1) whether the trial court erred in granting Holman's motion for summary judgment; and

(2) whether the trial court erred in denying the Association's motion for summary judgment.

### Facts and Procedural History

The Association is the exclusive bargaining representative of the Board's certificated school employees. The Board and the Association entered into a multi-year collective bargaining agreement ("CBA") with a starting date of January 1, 1992, and an expiration date of either December 31,

---

1. Holman is one of thirty-seven teachers (collectively, "the Teachers") who are the appellees-defendants in this appeal.

1996, or June 30, 1997, which encompassed a subsequent collective bargaining agreement for the 1996–1997 school year.[2] Both agreements contained a fair share fee provision that required each employee who was not a member of the Association and who did not wish to pay its membership dues to pay a fair share fee for bargaining representation expenditures to the Association and its affiliated organizations, the Indiana State Teachers Association ("ISTA") and the National Education Association ("NEA").

The Teachers failed to exercise their option to pay either Association member dues or a predetermined fair share fee calculated by the Association[3] to satisfy their contractual fair share fee obligations for the 1996–1997 school year. In accordance with Indiana law, the Association subsequently utilized arbitration procedures to determine the share of the bargaining representation expenditures properly chargeable to each nonmember for the 1996–1997 school year; this amount was calculated to be $317.36 per nonmember. The Teachers were notified of the arbitrator's determination and were sent follow-up letters demanding payment of the fee. When the Teachers refused to pay the fee, the Association filed suit against them on January 5, 1998.[4] In compliance with Ind. Trial Rule 9.2(A), the Association attached to its complaint a copy of the CBA's fair share fee provision, which listed the CBA's "begin date" as January 1, 1992, and its expiration date as December 31, 1996.

On January 22, 1998, the Teachers, each signing as a defendant pro se, filed an answer to the Association's complaint, in which they admitted that a contract existed between the Association and the Board containing the fair share fee provision attached to the Association's complaint. The Teachers also asserted three defenses: (1) that the fair share provision in the "contract Plaintiff [was] attempting to enforce [was] fundamentally flawed" and violated the Teachers' First Amendment rights; (2) that IND.CODE § 20–7.5–1–6, as amended by 1995 Ind. Acts 199, had voided the contract's fair share fee provision as of January 1, 1997; and (3) that the Association bore the burden "of proving its chargeable expenses before an impartial fact finder with jurisdiction over Defendants."

On January 22, 1998, Holman, who is not an attorney, filed a motion for summary judgment and dismissal that read in relevant part as follows:

Defendants move the court for Summary Judgement [sic] and Dismissal in their favor for the reason that the contract provisions in the contract Plaintiff is attempting to enforce between the Board of School Trustees of the New Albany–Floyd County School Corporation and the Plaintiff is fundamental [sic], and lawfully flawed. The governmental entity that is party to the contract infringement is Section 1 of [1995 Ind. Acts 199] that is amended to [IND.CODE § ] 20–7.5–1–6: Provisions requiring financial support from school

---

2. In reviewing a summary judgment, we construe the facts most favorably to the party appealing the trial court's ruling. See, e.g., Walling v. Appel Service Co., Inc., 641 N.E.2d 647, 648 (Ind.Ct.App.1994) (cross-motions for summary judgment; facts construed most favorably to appellants). However, as will be discussed below, there remains a genuine issue of material fact with respect to the expiration date of the CBA (and therefore its fair share fee provision) because the Association did not designate any portion thereof in support of its summary judgment motion and submitted it to the trial court for the first time in support of its motion to correct error.

3. If a nonmember of the Association had chosen to pay the fair share fee as calculated by the Association, she would have been entitled to a refund of any difference between this amount and the fair share fee determined by the arbitrator.

4. The Association filed an amended complaint on January 20, 1998, that did not materially change any matters asserted in its original complaint against the Teachers.

employee to a school employee organization void. Section 2(A) of [1995 Ind. Acts 199] provides a grandfather provision stating the amendments were to apply to contracts entered into after June 1, 1995.

Holman designated three evidentiary exhibits in support of his motion[5] and concluded as follows: "WHEREFORE, Defendants respectfully request the Court to grant Summary Judgement [sic] and Dismissal in favor of the Defendants. Respectfully submitted, /s/ Robert Holman Defendant." None of the other Teachers signed the motion.[6]

On May 18, 1996, the Association designated evidence and filed a brief in opposition to Holman's motion for summary judgment, wherein it argued that Holman had failed to demonstrate the absence of a genuine issue of material fact, and that the "grandfather clause" contained in 1995 Ind. Acts 199 actually protected the fair share fee provision of the master contract because the CBA had been entered into in 1992.

On September 21, 1998, the Association filed a motion for summary judgment and a brief, in which it argued that it had designated sufficient evidence in support of its motion to show that there were no genuine issues of material fact with respect to its claim against the Teachers for payment of their fair share fees for the 1996–1997 school year. Among the designated evidence was an affidavit from Association president Ronald Hutchens, in which he affirmed that the Association and the Board had "negotiated and entered into a collective bargaining agreement covering fiscal year 1996–97." The Association also designated affidavits from various ISTA and NEA officials regarding the calculation of the fair share fees for the entire 1996–1997 school year. The Teachers did not file a response in opposition to the Association's motion.

■ The trial court held a hearing on the parties' respective motions on January 20, 1999, at which only two of the Teachers, Holman and Gena Schmitt, appeared without counsel. During the hearing, the Association's counsel objected several times to evidence presented by Holman that had not been designated in his motion for summary judgment. He also remarked,

First, I guess, I'd like to point out to the Court that there's approximately thirty-seven Defendants that we filed, or the Association filed motion for summary judgment. Two people are here. Two Defendants are here today. They are all *pro se* Defendants. While *pro se* Defendants can represent themselves I don't believe they can represent other Defendants. So I just want to point that out to the Court.

(Emphasis in original.) On January 27, 1999, the trial court granted Holman's motion for dismissal without comment.[7]

---

5. Holman's designated evidence consisted of the following: (1) excerpts from the deposition of Association president Ronald Hutchens ("Hutchens") regarding annual bargaining sessions; (2) a letter from Hutchens discussing annual bargaining sessions that appeared in a January 1998 newsletter; and (3) the minutes from a March 1998 Association meeting regarding a fair share fee settlement as reported in an April 1998 newsletter.

6. In his motion for summary judgment and dismissal, Holman tangentially raised the issue that the Association was requiring the Teachers to "collect twice" for the fair-share fees due in school year 1996. This issue

percolated throughout the course of the trial court proceedings, and the Teachers' assertion that the Association attempted to raise it as an "additional" issue on appeal is disingenuous and wholly unsupported by the record. Because the Teachers no longer dispute this issue, however, we need not address it on appeal.

7. Although the trial court specifically granted Holman's motion to dismiss and did not rule on his motion for summary judgment, we must nevertheless treat the former as a motion for summary judgment on review. *See In re Train Collision at Gary, Ind. on Jan. 18, 1993*, 670 N.E.2d 902, 909 (Ind.Ct.App.1996), *trans. denied, Dillon v. Chicago Southshore,*

The Association filed a motion to correct error on March 1, 1999, in which it argued that the CBA did not "run afoul" of 1995 Ind. Acts 199; that this statutory amendment did not "prevent the Association from collecting a fair share fee for 1996–97"; and that the Association had properly supported its motion for summary judgment, to which the Teachers had failed to respond. Attached to its motion to correct error, the Association submitted the entire CBA to the trial court for the first time.[8] On March 15, 1999, Holman responded that the Association's motion to correct error should be denied. The trial court held a hearing on the Association's motion on April 9, 1999, at which Holman appeared without counsel. The trial court denied the motion to correct error on April 14, 1999. The Association now appeals.

## Discussion and Decision[9]

### *Standard of Review*

When reviewing the grant or denial of a motion for summary judgment, our standard is the same as that used by the trial court: "whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *City of New Haven v. Chemical Waste Management of Indiana, L.L.C.,* 701 N.E.2d 912, 921–22 (Ind.Ct. App.1998), *trans. denied* (1999). Our standard of review is not altered by cross-motions for summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 936 (Ind.Ct. App.1996). We do not weigh evidence, but construe the designated evidentiary materials in a light most favorable to the nonmoving party, giving careful scrutiny to ensure that the losing party is not improperly denied its day in court. *Becker v. Four Points Inv. Corp.,* 708 N.E.2d 29, 30 (Ind.Ct.App.1999). Once the moving party demonstrates that it is entitled to judgment as a matter of law, the nonmovant "may not rest upon bare allegations made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing there is a genuine issue in dispute." *Venture Enterprises, Inc. v. Ardsley Distributors, Inc.,* 669 N.E.2d 1029, 1032 (Ind.Ct.App.1996). The party appealing the trial court's grant or

683 N.E.2d 591 (Ind.1997), *cert. denied, Dillon v. Northern Indiana Transp. Dist.,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997) ("When a motion to dismiss is filed pursuant to Ind. Trial Rule 12(B)(6) and matters outside the pleadings are presented to and not excluded by the trial court, the motion shall be treated as one for summary judgment and disposed of as provided in Ind. Trial Rule 56.") (citing Ind. Trial Rule 12(B)(8)).

8. Section 8.411 of the CBA, as attached to the Association's motion to correct error, reads, "This Contract shall be effective on the 1st day of January 1992, and shall continue in effect through the *30th day of June, 1997,* at which time it shall expire without notice to or by either party." (Emphasis supplied.) Thus, the ending date of the CBA as specified in section 8.411 obviously differs from the ending date of the excerpted portion of the CBA that the Association attached to its complaint.

9. The first issue raised by the Association is whether Holman's motion for summary judgment and dismissal should be considered a nullity because it was filed by a nonlawyer on behalf of all thirty-seven defendants, thereby constituting the unauthorized practice of law.

The Teachers attempt to paint both sides of the fence on this issue by arguing that Holman never indicated he was representing anyone but himself, but that considerations of judicial economy should nevertheless favor the affirmation of the trial court's ruling on behalf of the Teachers. Considering Holman's consistent and exclusive use of the term "Defendants" in his motion for summary judgment and dismissal, we find incredible the Teachers' assertion that Holman "never indicated he was 'representing' anyone but himself." Notwithstanding their post hoc rationalizations, we remind the Teachers that "[a] litigant who chooses to proceed *pro se* will be held to the same established rules of procedure as trained legal counsel." *Wright v. Elston,* 701 N.E.2d 1227, 1231 (Ind.Ct.App. 1998), *trans. denied* (1999) (emphasis in original). Therefore, we cannot accept the contention that the Teachers "should not have it held against them that occasionally Mr. Holman resorted to some ambiguity in his pleadings and argument." Because we reverse the trial court's grant of Holman's motion, however, we need not address these arguments further.

denial of summary judgment bears the burden of persuading us that the trial court erred. *City of New Haven*, 701 N.E.2d at 922. A trial court's grant of summary judgment is clothed with a presumption of validity on appeal, and we will affirm if it is sustainable on any theory supported by the designated evidence in the record. *Bamberger*, 665 N.E.2d at 936.

### I. Holman's Motion for Summary Judgment

■ It is well settled that we may not "look beyond the evidence specifically designated to the trial court" in reviewing the propriety of its ruling on a summary judgment motion. *O'Connor by O'Connor v. Stewart*, 668 N.E.2d 720, 722 (Ind.Ct.App. 1996). After scrutinizing Holman's ambiguous motion for summary judgment and equally ambiguous designated evidence, we conclude that he failed to demonstrate the absence of a genuine issue of material fact regarding the Association's claim for fair share fees. Not only did Holman fail to designate any portion of the CBA, but he also failed to cite any legal authority to support his nebulous interpretation of Ind. Code § 20–7.5–1–6 and 1995 Ind. Acts 199 or to explain the relevance of this legislation to his designated evidence. Given that we must construe the foregoing evidence in a light most favorable to the Association, we conclude that the trial court erred in granting Holman's motion for summary judgment.

### II. Association's Motion for Summary Judgment

■ As mentioned previously, the Teachers failed to respond to the Association's motion for summary judgment and therefore never disputed the Association's designation of material facts showing that it had complied with the fair share fee calculation and collection procedures outlined under *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) and *Albro v. Indianapolis Educ. Ass'n*, 585 N.E.2d 666 (Ind.Ct. App.1992), *opinion adopted on transfer, Fort Wayne Educ. Ass'n, Inc. v. Aldrich*, 594 N.E.2d 781 (Ind.1992).[10] The Association correctly observes that if a non-moving party does not respond to a properly supported motion for summary judgment by enumerating specific facts showing a genuine issue for trial, Ind. Trial Rule 56(E) requires that summary judgment be entered against that party, if appropriate. *See Seufert v. RWB Medical Income Properties I Ltd. Partnership*, 649 N.E.2d 1070, 1072 (Ind.Ct.App.1995). Upon reviewing the Association's motion for summary judgment and designated evidence, we conclude that it demonstrated the absence of a genuine issue of material fact with respect to its fair share fee calculation and collection procedures, and that it was entitled as a matter of law to the Teachers' payment of these fees for the 1996–1997 school year *through December 31, 1996.* Therefore, we must reverse in part the trial court's denial of the Association's summary judgment. However, because our review of the record reveals a genuine issue of material fact with respect to the expiration date of the CBA (either on December 31, 1996, or at the end of the 1996– 1997 school year),[11] we must affirm the trial court's ruling in part and remand this

---

10. In *Albro*, we reiterated the U.S. Supreme Court's three guidelines "for determining on a case-by-case basis what expenses a union may charge nonunion members without impinging upon the nonunion members' first amendment rights": (1) "union expenses must be for activities that are 'germane' to collective bargaining"; (2) "the expenses must be for activities that are justified by the government's vital policy interest in labor peace and avoiding 'free riders'"; and (3) "the expenses must be for activities that do not significantly add to the burdening of free speech that is inherent in allowing an agency or union shop." 585 N.E.2d at 671, *quoting Lehnert*, 500 U.S. at 519, 111 S.Ct. at 1959.

11. The Association argues that the CBA was in effect for the entire 1996–1997 school year, specifically from January 1, 1992, through June 30, 1997. To support its argument, however, the Association refers to the com-

cause to the trial court for further factual determinations on this issue.

* * *

■■■■ In their answer to the Association's complaint, the Teachers asserted that 1995 Ind. Acts 199 § 2(b) effectively rendered all fair share fee contract provisions void as of January 1, 1997. The Association did not address this issue in its motion for summary judgment, nor did the Teachers raise it in response thereto. Nevertheless, because the interpretation of a statute is a question of law, and because an examination of 1995 Ind. Acts 199 § 2(b) is a matter of first impression for this Court, we shall address it here for purposes of judicial economy.[12]

plete version of the CBA that it attached to its motion to correct error; this contract was never designated to the trial court as evidence in support of its summary judgment motion and therefore cannot be considered in this context on appeal. The Association also argues that Holman admitted that the CBA extended through June 30, 1997; this argument is inconsistent with its assertions regarding his unauthorized practice of law and his inability to represent (and therefore legally bind the interests of) the other Teachers before the trial court.

**12.** *Cf. Indiana Patient's Compensation Fund v. Anderson,* 661 N.E.2d 907, 908 (Ind.Ct.App. 1996), *trans. denied* (review of summary judgment ruling; where relevant facts are not in dispute, construction of statute "presents a pure question of law for which disposition by summary judgment is appropriate"). The Teachers implicated 1995 Ind. Acts 199 § 2(b) in their answer as their second defense, but failed to address this issue or designate any evidence in regard thereto in response to the Association's summary judgment motion. Section 5.152 of the CBA reads,

While benefits impacting upon Designated Instructional Expenditures may be changed at any time during this Contract, in accordance with the terms of the formula, the Contract will be *reopened* each year of its term, between April 1 and June 30, for the purpose of negotiating language items. *Any language item not resolved by June 30 will remain status quo.*

(Emphases supplied.) In his confusingly worded motion for summary judgment, Holman apparently attempted to establish that

■■■■ As amended by 1995 Ind. Acts 199 § 1, Ind.Code § 20–7.5–1–6(a) reads in relevant part as follows:

School employees shall have the right to form, join, or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing, and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits .... *A school employee may not be required to join or financially support through the payment of fair share fees, representation fees, professional fees, or other fees, a school employee organization. A rule,*

the annual collective bargaining sessions contemplated in the CBA constituted new and separate contracts, thereby implying that the 1996–1997 collective bargaining agreement (which retained the CBA's fair share fee provisions) ran afoul of 1995 Ind. Acts 199 irrespective of section 2. Holman failed to develop a cogent argument or designate any evidence to support this inchoate claim, however, and although this issue was addressed by the Association in its response to Holman's motion and in its motion to correct error and is addressed by both parties in their appellate briefs, we conclude that it was never properly submitted as an issue of material fact at the summary judgment stage. *See Garza v. Lorch,* 705 N.E.2d 468, 473 (Ind.Ct.App.1998) (summary judgment appellant quoted incorrect section of code, failed to provide independent statutory analysis, and failed to refer to designated evidence to support declaratory action claim; issue waived on appeal). The Teachers also waived consideration of this issue by admitting in their answer to the existence of "a contract" between the Association and the Board and further admitting to the contract's fair share fee provisions, which listed the contract's "begin date" as January 1, 1992. *See People's Mut. Ben. Soc. v. McKay,* 141 Ind. 415, 421–22, 39 N.E. 231, 233 (1894) (appellant's admissions "as to the insurable interest of the appellee" were expressly waived and no longer in issue). The only issue to be determined on remand is whether the Association will be able to collect fair share fees from the Teachers under the CBA for January 1, 1997, through the end of the 1996–1997 school year.

*regulation, or contract provision requiring financial support from a school employee to a school employee organization is void.*

(Emphasis of amended language supplied.) 1995 Ind. Acts 199 § 2, an uncodified section of the same law, further provides,

(a) [IND.CODE § ] 20–7.5–1–6, as amended by this act, applies to contracts entered into after June 30, 1995.

(b) This SECTION expires December 31, 1996.[13]

In *Whitley County Teachers Association v. Bauer*, 718 N.E.2d 1181, 1184, n. 2 (Ind. Ct.App.1999), *Anderson v. Yorktown Classroom Teachers Ass'n*, 677 N.E.2d 540, n. 1 (Ind.Ct.App.1997) and *DeBaets v. National Educ. Association–South Bend*, 657 N.E.2d 1236, 1237, n. 1 (Ind.Ct.App. 1995), *trans. denied* (1996), we recognized that 1995 Ind. Acts 199 § 1 applies only to contracts entered into after June 30, 1995; however, we did not address the ramifications of the expiration date contained in subsection (b) of section 2.

When called upon to interpret a statute our threshold inquiry is whether the statute is ambiguous. This is so because absent ambiguity the court cannot interpret a statute or substitute words to fit within a construction different from that which the legislature clearly and expressly intended. A statute is ambiguous when the wording thereof "arguably supports either of the competing interpretations advocated by the parties."

*Allstate Ins. Co. v. Larkin's Body Shop and Auto Care, Inc.*, 673 N.E.2d 846, 848 (Ind.Ct.App.1996) (citations omitted). In the instant case, subsection (b) is unambiguous and clearly not subject to competing interpretations. Indeed, both parties interpret subsection (b) as providing for the expiration of the savings clause in subsection (a) after December 31, 1996.[14] Therefore, "we must give effect to the plain, ordinary, and usual meaning of the words of the statute" and cannot engage in statutory interpretation. *State v. CSX Transp., Inc.*, 673 N.E.2d 517, 519 (Ind.Ct.App. 1996).

Having determined the plain meaning of subsection (b), we turn our attention to its application: "Whether a statute or amendment is to be applied retroactively to pending cases or only prospectively depends upon the legislature's intent. Absent an express indication otherwise, we presume that the legislature intends statutes and amendments to apply prospectively." *Chesnut v. Roof*, 665 N.E.2d 7, 9 (Ind.Ct.App.1996). By operation of law, subsection (b) effectively rendered section 1 as the only section of the amendment in force as of January 1, 1997. Because IND.CODE § 20–7.5–1–6, as amended by 1995 Ind. Acts 199 effective July 1, 1995, contains no language indicating that the legislature intended it to be applied retroactively, the amendment would not apply to contracts executed before that date regardless of the expiration of section 2. Therefore, because the Association and the Board entered into the master contract before July 1, 1995, IND.CODE § 20–7.5–1–6 as amended by 1995 Ind. Acts 199 does not apply to and therefore does not invalidate its fair share fee provisions.[15]

---

**13.** As we remarked in *Sullivan v. Day*, 661 N.E.2d 848, 851, n. 3 (Ind.Ct.App.1996), *vacated in part on other grounds*, 681 N.E.2d 713 (Ind.1997), "A 'non-code' section is one which, though enacted with a piece of legislation, is not codified within the Indiana Code. Such 'non-code' provisions, though uncodified, are appropriately considered by a court when interpreting a statute."

**14.** The Association offers several possible interpretations of subsection (b) in its brief for the sake of argument, but we conclude that the subsection's wording does not "arguably support" its alternative interpretations.

**15.** Although we do not reach our decision on this basis, we agree with the Association that 1995 Ind. Acts 199 § 1 could not be applied retroactively in any event because it would impermissibly affect existing contract rights with respect to fair share fee provisions under contracts entered into before July 1, 1995. *See Chesnut*, 665 N.E.2d at 10 ("[A]mendments that affect existing rights or obligations

## Conclusion

In summary, we reverse the trial court's grant of Holman's motion for summary judgment. Additionally, we reverse the trial court's denial of the Association's motion for summary judgment only with respect to its fair share fee calculation and collection procedures and its claim against the Teachers for these fees due and owing through December 31, 1996; and affirm the trial court's denial of the Association's motion in part with respect to its claim against the Teachers for fair share fees from January 1, 1997, through June 30, 1997. We remand this cause to the trial court to determine the amount of the Association's claim for fair share fees from January 1, 1997, through June 30, 1997, and whether the amount of such claim is appropriately resolved through either summary judgment proceedings or a trial on the merits.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM and ROBB, JJ., concur.

*cannot* be applied retroactively.") (emphasis supplied).