**Bruce DAVIDSON, Appellant–Plaintiff,**

v.

**James PERRON and the City of Elkhart, Appellees–Defendants.**

**No. 43A05–0105–CV–184.**

Court of Appeals of Indiana.

Oct. 11, 2001.

Roger A. Bird, Bird Svendsen Brothers, Scheske & Pattison, P.C., Sturgis, MI, Attorney for Appellant.

R. Kent Rowe, Marie Anne Hendrie, South Bend, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

Bruce Davidson appeals a grant of summary judgment in favor of the City of Elkhart (the City), as well as certain discovery rulings issued by the trial court. Specifically, Davidson presents the following restated issues for review:

1. Did the trial court abuse its discretion in granting the appellees' motion to strike the affidavit of Carol McDowell?

2. Did the trial court err in limiting discovery by Davidson?

3. Did the trial court err in granting summary judgment in favor of the City concerning claims arising under 42 U.S.C. § 1983?

We affirm.[1]

This case has come before this court on two prior occasions. We reproduce below the facts as set out in the second of those two opinions: [2]

Until his termination by the Elkhart Board of Public Works in October of 1995, Davidson was a police officer with the Elkhart Police Department and was also president of the local Fraternal Order of Police. On January 4, 1994, a letter signed and purportedly written by Elkhart reserve police officer Steven Cappelletti appeared in the editorial section of The Elkhart Truth. The letter, written in response to a letter Davidson had written that had been published in the newspaper several days earlier, contained the following two paragraphs that became the subject of this lawsuit:

Davidson's assertion that "Mayor Perron has been too soft on crime and a little too hard on cops" is laughable. *In reality, some cops like Davidson have been a little too soft on crime and too hard on Mayor Perron.*

*Police certainly have privileges but I do not believe that they should be abused in the way that some officers like Davidson have done.* The so-called vote of no confidence amounted to only a cheap shot against the chief.

**1.** Oral argument was conducted in this cause on September 11, 2001 at Zionsville High School in Zionsville, Indiana. This court wishes to thank the Boone County Bar Association and the students, faculty, and staff of Zionsville High School for their graciousness in hosting that proceeding. We are especially appreciative of the efforts and attentiveness of all involved in light of the tragic events unfolding elsewhere in our nation on that day. In view of those events, some thought was given at the time to rescheduling the oral argument. However, that proceeding was held in conjunction with the year-long Centennial Celebration of the Indiana Court of Appeals, and therefore special events and arrangements surrounding the oral argument

had been scheduled and implemented. Even communicating the decision to postpone in a timely fashion to everyone involved would have been impossible. Moreover, as Presiding Judge Baker explained to the attendees at the outset of oral argument on that fateful day, our country's strength is such that even an attack of such terrible magnitude does not prevent our justice system from conducting its business. Still, our thoughts and best wishes were then, and remain, with all of those who suffered as a result of the attacks and their aftermath.

**2.** The first opinion can be found at *Davidson v. City of Elkhart,* 696 N.E.2d 58 (Ind.Ct.App. 1998), *trans. denied.*

*Record* at 82 (emphasis added). In January of 1995, Cappelletti admitted to Davidson that the Mayor was the true author of the letter. Thereafter, on February 9, 1995, Davidson sent his written tort claims notice to the Mayor and the City. Although the Mayor publicly denied that he had written the letter and his denial was reported in The Elkhart Truth, the Mayor later admitted during a deposition that he had written the letter.

On June 1, 1995, Davidson filed a one count complaint for defamation against the Mayor and the City in the Elkhart Superior Court. The Mayor and the City filed a motion to dismiss on July 21, 1995, alleging that the statements in the letter were not defamatory, as a matter of law. The Elkhart Superior Court granted the motion to dismiss in part, and denied the motion in part. Davidson then filed a motion to amend his complaint to include constitutional and civil rights claims under 42 U.S.C. § 1983 against the Mayor and the City. Davidson's constitutional and civil rights claims alleged that the Mayor had engaged in a plan to discredit him and damage his reputation. Davidson also alleged that the Mayor engaged in harmful conduct which eventually led to Davidson's termination from the police department and which further damaged his reputation. The parties subsequently moved for a change of venue due to excessive press coverage, and the case was transferred to the Kosciusko Circuit Court.

With leave of court, Davidson then filed a "Restated Complaint" on May 22, 1998. The Mayor and the City filed a motion to dismiss the restated complaint which the court granted on June 30, 1998. In response, Davidson filed a motion to amend the complaint which was granted by a judge pro tempore. Thereafter, in addition to filing his two count "Amended Complaint for Civil Rights Violations, Defamation, and Libel" against the Mayor and the City, Davidson filed a Motion to Correct Error regarding the trial court's June 30, 1998, dismissal of his restated complaint. Following a hearing held on October 7, 1998, the trial court denied Davidson's motion to correct error and granted the Mayor and the City's motion to dismiss Davidson's amended complaint.

*Davidson v. Perron,* 716 N.E.2d 29, 32–33 (Ind.Ct.App.1999) (Kirsch, J., concurring in part and dissenting in part).

In the second appeal, this court held that the trial court erred when it dismissed Davidson's defamation claim pursuant to Ind. Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. We also reversed the trial court's dismissal, on grounds that the same action was pending in another state court of this state, of Davidson's constitutional and civil rights claims. *See id.*

After the case was remanded to the trial court for further proceedings, disputes arose with respect to the boundaries of permissible discovery available to Davidson. Davidson appeals herein several adverse decisions pertaining to discovery. Also after remand, the City filed a motion for summary judgment on both counts of Davidson's complaint, *i.e.,* defamation and constitutional rights violations. The trial court granted the motion and entered summary judgment in favor of the City on both counts of Davidson's complaint. Davidson appeals that ruling only with respect to the claim of constitutional rights violations.

1.

Davidson contends that the trial court erred in striking the affidavit of Carol McDowell.

A trial court enjoys broad discretion when ruling upon discovery matters and we will interfere only where an abuse of discretion is apparent. *Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292 (Ind. Ct.App.2000). An abuse of discretion occurs where the decision is against the logic and natural inferences to be drawn from the facts of the case. *Id.* Because of the fact-sensitive nature of discovery issues, a trial court's ruling is cloaked with a strong presumption of correctness. *Id.*

In the instant case, on March 14, 1999, Carol McDowell executed an affidavit that stated as follows:

1. I am an adult resident of the State of Indiana.

2. That from 1992 to 1996 I served on the Elkhart City Council.

3. That I know Bruce Davidson and that Bruce Davidson worked on my mayoral campaign in 1995.

4. After a city council meeting on August 7, 1995, I spoke with then [Elkhart Chief of Police] Dennis Bechtel.

5. Bechtel asked me if we couldn't be friends and I told him not as long as he was "going after" people who were honest and had integrity, which was a reference to Bruce Davidson.

6. Bechtel then told me that "If I don't get him on this, then I'll get him on other stuff."

7. By "this," Bechtel was referencing the current charges that he had brought against Davidson.

8. I made a statement at some point indicating that I thought that Bechtel should not be attempting to get Davidson terminated.

9. Bechtel's response to my statement described in paragraph eight (8) above was that there was "way too much water over the bridge between him and Perron."

10. My understanding of the conversation as described above was that Bechtel had orders from Perron, because of the public differences between Perron and Davidson, for Bechtel to have Davidson terminated.

*Appellant's Appendix* at 160.

The trial court set November 3, 2000 as the date by which discovery was to be completed. On May 3, 2000, the appellees served upon Davidson a request for production of documents that included a request for "[a]ny statement, whether written or oral, signed or unsigned, in the plaintiff's possession from any individual listed in response to any of the interrogatories served upon the plaintiff" and "[a]ny statement, whether written or oral, signed or unsigned in the plaintiff's possession from any individual who claims to have knowledge of any fact supporting the plaintiff's claim." *Appellant's Appendix* at 260. On June 5, 2000, Davidson submitted the following in response to the two requests:[3]

Plaintiff objects to this request to the extent that it calls for information protected by the attorney-client and work product privileges. Subject to and without waiving his objections, Plaintiff states that he has no statements yet, but that he will produce same, subject to his rightful objections, when those statements are complete.

*Appellant's Appendix* at 262. We reiterate here that the McDowell affidavit had then been in Davidson's possession for more than one year. Also on June 5, 2000, in answer to an unrelated discovery request from the appellees, Davidson identi-

---

**3.** Actually, Davidson responded to the first request as indicated, and then simply incorporated that answer by reference when responding to the second request.

fied McDowell as an individual that Davidson planned to call as a witness on his behalf at trial. On September 2, 2000, however, Davidson filed his witness list and McDowell's name was not included.

On September 15, 2000, Perron and the City filed a motion or summary judgment. In response, on November 17, 2000, Davidson filed a motion and brief in opposition to the motion for summary judgment. In support of his motion, Davidson designated the affidavit of McDowell. On December 5, 2000, the appellees moved to strike McDowell's affidavit on the ground that although it was executed more than seventeen months before, its existence was not divulged until after the November 3 discovery cut-off date. The trial court granted the motion to strike.

The court set a November 3 discovery deadline, and Davidson failed to adhere to that deadline with respect to the McDowell affidavit. Davidson's counsel explained at oral argument before this court that Davidson failed to comply with the deadline primarily because, at the time, he was representing himself. According to counsel, Davidson simply forgot that he had the affidavit when he responded to the appellees' discovery requests. Counsel opined that this oversight was understandable in view of the sheer volume of material then contained in the case file. Those reasons are not persuasive.

▇▇▇ The rules of trial and appellate procedure in Indiana do not allow greater latitude for mistakes in cases where the materials are more voluminous. Moreover, "[a] litigant who chooses to proceed *pro se* will be held to the same established rules of procedure as trained legal counsel." *New Albany–Floyd County Educ. Ass'n v. Ammerman*, 724 N.E.2d 251, 256 n. 9 (Ind.Ct.App.2000) (quoting *Wright v. Elston*, 701 N.E.2d 1227, 1231 (Ind.Ct.App. 1998), *trans. denied* (1999)). In short, Davidson's failure to adhere to the deadline, even through inadvertence, is inexcusable and subject to sanction.

▇▇▇ A trial court enjoys broad discretion in determining the appropriate sanctions for a party's failure to comply with discovery orders. *Vernon v. Kroger Co.*, 712 N.E.2d 976 (Ind.1999). "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *Id.* at 982 (quoting *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993)). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances of the case, or if it misinterprets the applicable law. *Vernon v. Kroger Co.*, 712 N.E.2d 976. One sanction available in cases where a party seeks to introduce evidence that violated the trial court's discovery rules is the exclusion of that evidence. *See Nyby v. Waste Management, Inc.*, 725 N.E.2d 905 (Ind.Ct. App.2000), *trans. denied*. Absent clear error and resulting prejudice, the trial court's determinations with respect to violations and sanctions should not be overturned. *Cliver v. State*, 666 N.E.2d 59 (Ind.1996).

Davidson contends that the admissibility of the McDowell affidavit is to be determined consistent with the principles set out in *Tyson v. State*, 619 N.E.2d 276 (Ind.Ct.App.1993), *trans. denied*. In *Tyson*, this court reviewed the factors identified by our supreme court "as appropriate for a trial court to consider in determining its course of action when a party seeks to use the testimony of a witness whose identity is disclosed to the opponent after discovery has been closed." *Id.* at 282. Those factors include the following:

1. When did the witnesses first become known to the opposing counsel?

2. How vital is the potential witnesses' testimony to the case of the propo-

nent of the witness—is it relevant and material or merely cumulative?

3. What is the nature of the prejudice to the opponent—would permitting the witnesses to testify have a deleterious impact on the case prepared by the opponent?

4. Are less stringent alternatives appropriate and effective to protect the interest of the parties?

5. Will the opponent be unduly surprised and prejudiced by the inclusion of the witnesses' testimony despite the available and reasonable alternatives (e.g., a recess or a continuance) to allow the opponent to interview the witnesses and conduct further investigation, if necessary?

*Id.*

■ The appellees first became aware that McDowell was potentially a witness on July 5, 2000, when Davidson identified her as such in response to a discovery request. The significance of that disclosure, however, was minimized by virtue of Davidson's subsequent failure to identify McDowell on his September 2 witness list. Moreover, the nature of McDowell's proposed testimony would not have been apparent merely by virtue of knowing her identity.

With respect to the significance of McDowell's affidavit to this case, it merely conveys McDowell's understanding of the purported, unspoken meaning of a brief exchange she had with Elkhart's chief of police. The exchange itself, as described by McDowell, does little to prove Davidson's assertion that Perron orchestrated his termination. Moreover, we agree with the appellees that *McDowell's understanding* of the underlying meaning of the chief's comments is irrelevant in this case.

Even assuming that the content of McDowell's affidavit was relevant, the third element of the *Tyson* analysis does not lend support to Davidson's cause. Al-

though the appellees were advised at one point that McDowell would be a witness, her involvement in the case was peripheral, at best. In fact, it is fair to say that her proposed affidavit would have served only to underscore a topic upon which Chief Bechtel's testimony would have been relevant and perhaps crucial. The appellees deposed Chief Bechtel, but because they were at the time unaware of the alleged exchange with McDowell, they did not question him on that particular subject. Assuming McDowell's affidavit had been admitted, the appellees would have been ill prepared to respond to Davidson's contention in this regard and, therefore, the resulting prejudice to the appellees' case would not have been insignificant.

Mindful of our deferential standard of review, and having determined that the first three elements favor striking the affidavit, we deem it unnecessary to evaluate the final two elements of the *Tyson* analysis. The trial court did not abuse its discretion in granting the appellees' motion to strike McDowell's affidavit.

2.

Davidson contends that the trial court erred in limiting discovery by not allowing Davidson to seek information about other individuals who had been employed by the City. As was the case with Issue 1, the challenged rulings discussed herein concern matters committed to the trial court's discretion and we review for abuse of discretion. *Small v. Centocor, Inc.,* 731 N.E.2d 22 (Ind.Ct.App.2000), *trans. denied.*

On May 11, 2000, Davidson served upon the appellees a discovery request entitled "Plaintiff's First Request for Production of Documents to Defendants." *Appellant's* Appendix at 77. On June 19, 2000, the appellees submitted a motion for a protective order relating to some of the May 11 requests for production. The trial court

granted the appellees' motion in part, thereby imposing limitations with respect to the time period and subject matter covered by the requests.

The temporal limitation was that Davidson could not inquire into matters that transpired any time other than the period between January 1, 1993 and December 31, 1996. With respect to subject matter, the court ruled that all of the following matters were irrelevant to Davidson's case and therefore not subject to discovery: (1) Disciplinary proceedings pertaining to Joseph Emerson, (2) the investigation and arrest of James Slater, (3) correspondence between Chief Bechtel and Mayor Perron that occurred outside of the relevant timeframe, (4) the files of all other city employees who were terminated between January 1, 1994 and December 31, 1999, (5) the arrest and investigation files of all persons arrested by Chief Bechtel, (6) all materials pertaining to the shooting death of Derrick Conner, (7) campaign notes and letters and a list of contributors pertaining to Perron's 1995 and 1999 mayoral campaigns, (8) Perron's notes, journals, diaries, memoirs, and planners for any period of time other than January 1, 1993 through December 31, 1996, and (9) all internal affairs files relating to every officer of the Elkhart Police Department from January 1, 1993 through December 31, 1999.

Davidson contends upon appeal that the trial court abused its discretion in placing the aforementioned subjects and time periods beyond the scope of discovery, because they were relevant to show "a custom or practice of reprisal of Perron or at the direction of Perron by City official subordinates of Perron." Appellant's Brief at 5. Davidson argues that those other instances, admittedly unrelated to his case, would have demonstrated a pattern of reprisal, of which Davidson's dismissal was just one example. We find this reasoning unper-

suasive because Davidson's claim of retributive action must stand or fall on its own merits. His case cannot be based upon proof that another or others were terminated in that manner. The same is true with respect to the temporal limitations imposed by the trial court. Davidson has not demonstrated how any occurrences before January 1, 1993 or after December 31, 1999 had any relevance to *his* termination. We are satisfied that the trial court's discovery limitations and rulings were appropriate, and certainly did not constitute an abuse of discretion.

3.

Davidson contends that the trial court erred in granting summary judgment in favor of the City.

When reviewing a grant of summary judgment, we apply the same standard as did the trial court. We must consider the designated materials in a light most favorable to the nonmoving party and decide whether there remains a genuine issue of material fact, or whether instead the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Eichenberger v. Eichenberger*, 743 N.E.2d 370 (Ind.Ct.App.2001). The nonmovant bears the burden of demonstrating that the grant of summary judgment was erroneous. Nevertheless, we carefully examine the trial court's decision in order to ensure that the nonmovant was not denied his day in court. *Id.*

Davidson filed a two-count complaint against the City, the first count alleging defamation and the second a violation of Davidson's constitutional rights. The City filed its motion for summary judgment seeking judgment as a matter of law on both claims. The trial court granted the City's motion. Upon appeal, Davidson contends that the trial court erred in entering summary judgment in the appellees' favor on the issue of whether the City

violated Davidson's constitutional rights. Specifically, Davidson contends that the City is liable pursuant to 42 U.S.C. § 1983 for violating his rights under the Equal Protection and Due Process Clauses of, as well as the First Amendment to, the United States Constitution.

■ At the heart of Davidson's complaint on the first and third constitutional bases of recovery is the notion that the damage he suffered was wrongful termination from his position as a City of Elkhart police officer. Specifically, his First Amendment claim is, in essence, that he was fired for criticizing Mayor Perron. In Davidson's first appeal, however, this court affirmed the decision of the Elkhart Board of Public Works that termination was warranted because of Davidson's unauthorized statements to the press about an ongoing criminal case that was entirely unrelated to Mayor Perron. *See Davidson v. City of Elkhart*, 696 N.E.2d 58. Thus, Davidson cannot pursue an action based upon the theory that he was wrongfully terminated as a result of his exercise of free speech under the First Amendment. *See Slutsky v. Crews*, 713 N.E.2d 288, 291 (Ind.Ct.App. 1999) (the doctrine of issue preclusion "bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent cause of action").

■ The same is true of his claim arising under the Equal Protection Clause. His claim in that regard is that unequal governmental treatment, in the form of dismissal from employment, was brought to bear upon him "merely because a powerful ... local official harbor[ed] malignant animosity towards him." Appellant's Brief

at 17. Again, having previously determined that he was terminated for just cause unrelated to Mayor Perron, we must conclude that Davidson cannot prevail on a claim that would require us to reassess the cause and appropriateness of his dismissal. *See Slutsky v. Crews*, 713 N.E.2d 288.

■ The third claimed violation of Davidson's constitutional rights is essentially that Davidson was denied a fair hearing before the Elkhart Board of Public Works (the Board) because of Perron's interference. Davidson explains this contention as follows: "[T]he record in this case demonstrates that the City misused its otherwise legitimate disciplinary procedures in a single-minded effort to discharge Davidson because of his expressed opposition to Perron and his support of McDowell." Appellant's Brief at 23. We note that Davidson does not claim that the City failed to adhere to the correct procedures in terminating him. Rather, he claims that the City's motivation was tainted and, in effect, the "jury" (*i.e.,* the Board) was rigged. As was the case with his equal protection and free speech claims discussed previously, Davidson's argument on this point necessarily invites us to revisit the propriety of his discharge. Again, we must decline the request. *See Slutsky v. Crews*, 713 N.E.2d 288.

■ Finally, Davidson claims that the trial court erred in granting summary judgment upon his claim under § 1983 that the City's actions violated his liberty interest or property right in employment. This claim arises under the Due Process Clause. To the extent that this argument asserts a right to continued employment as a police officer for the City of Elkhart,[4] it

---

4. We have determined that "members of a police department may be terminated only for cause and, therefore, enjoy a protectible property interest in their continued employment with their police department." *Burke v. City*

*of Anderson*, 612 N.E.2d 559, 565 (Ind.Ct. App.1993), *trans. denied* (quoting *Kennedy v. McCarty*, 778 F.Supp. 1465, 1470 (S.D.Ind. 1991)).

must be rejected on the basis of issue preclusion, as indicated above. *See Slutsky v. Crews,* 713 N.E.2d 288. Davidson's second argument in this respect includes the claim that the City's action interfered with his right to future employment, which may in this context rise to the level of a liberty interest. *See Burke v. City of Anderson,* 612 N.E.2d 559. We will address this argument separately.

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court confined the due process protection of a liberty interest in this context to situations in which the State inflicts damage to a government employee's good name, reputation, honor, or integrity in the process of terminating his employment. The Court also indicated in *Paul v. Davis* that defamation of an individual by the government *that is connected* with a refusal to rehire might give rise to an action under the Fourteenth Amendment.

■ The allegedly defamatory statements upon which Davidson's § 1983 claim were based consisted of the January 4 letter purportedly written by Officer Cappelletti, and the July 5, 1995 and November 2, 1995 newspaper articles on the topic of an alleged FBI investigation of Davidson. Those articles appeared in the local newspaper. The record reflects that none of those communications were connected to Davidson's discharge. Rather, Davidson was discharged for making unauthorized statements to the press regarding a pending investigation. This court affirmed that decision upon appeal.[5] *See Davidson v. City of Elkhart,* 696 N.E.2d 58. Thus, because there was no nexus between the disciplinary action that culminated in his dismissal and the allegedly defamatory statements that formed the basis of Davidson's § 1983 liberty-interest claim, there is no basis for a § 1983 cause of action. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405.

In summary, the trial court did not err in striking witness McDowell's affidavit, or in restricting the scope of discovery as it did. Also, the trial court did not err in granting summary judgment in favor of the City.

Judgment affirmed.

BAKER, J., and KIRSCH, J., concur.

5. The Board also concluded that Davidson's discharge was appropriate based upon a third charge, which involved Davidson's use of a list of telephone numbers. Davidson had obtained the list, comprised of numbers called from Mayor Perron's cell phone, pursuant to a public records request. After he obtained the list, Davidson asked a dispatcher at the Communications Department to run the numbers on the 911 system in order to learn the identity of the persons whose phone numbers appeared on the list. The Board found that the list was not obtained for the purposes of responding to an emergency call or pursuant to an authorized investigation, and it was obtained without warrant or court order. The trial court reversed the Board's ruling upon this charge, stating, "The City presented no evidence that there was any specific policy concerning the use of the 911 system and there was other ample evidence of many incidences where at best one could say access to the 911 system was 'casually' utilized." *Appellees' Amended Appendix* at 58. Although the City cross-appealed the trial court's ruling in that regard in the first appeal, this court declined to consider the matter because the decision to terminate was affirmable on other grounds.